## INDIAN TERRITORY ILLUMINATING OIL CO. v. HAYNES DRILLING CO. et al.

No. 24422.    April 13, 1937.

Rehearing Denied June 22, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 29, 1937.

Fred M. Carter, W. P. McGinnis, R. M. Williams, Archibald Bonds, Donald Prentice, Samuel H. Riggs, and Darrall G. Hawk, for plaintiff in error.

Hayes, Richardson, Shartel, Gilliland & Jordan, Harry O. Glasser, and W. M. Phillips, for defendant in error Haynes Drilling Company.

Victor C. Mieher, M. D. Kirk, William H. Zwick, W. F. Semple, James B. Diggs, Ben B. Blakeney, E. H. Chandler, Summers Hardy, Y. P. Broome, R. H. Hudson, R. B. F. Hummer, Joe T. Dickerson, Geo. W. Cunningham, W. P. Z. German, Clay Tallman, Guy Woodward, John Rogers, Jess H. Hill, George Bowen, Ross C. Gwilliam, James C. Denton, R. H. Wills, Hayes McCoy, Alvin Richardson, James A. Veasey, and Lloyd G. Owen, amici curiae (brief in support of plaintiff in error).

BUSBY, J. This is an equity case, which, stripped down to the basic question actually involved, presents the simple question of whether or not the Indian Territory Illuminating Oil Company, defendant in the trial court and plaintiff in error here, has reasonably and properly protected from drainage an 80-acre community oil and gas lease in the Oklahoma City field. Subsequent to the execution of the community lease and subject thereto, the Haynes Drilling Company, plaintiff in the trial court, and defendant in error here, purchased the fee of the northeast 10 acres out of the 80. After the cancellation by the judgment of the trial court of the lease as affecting the east 3⅓ acres of the Haynes' 10-acre tract, and pending appeal from such judgment, the Haynes Drilling Company drilled a producing well on such canceled portion. A number of questions other than proper protection from drainage are raised by the parties, but most of these questions are entitled to little consideration. They more or less cloud the real issue and tend to confuse. However, since they are raised and earnestly argued, they will be considered hereafter in this opinion.

Under the facts in this case as hereinafter detailed, there was a duty upon the part of the plaintiff in error, Indian Territory Illuminating Oil Company, hereinafter referred to as the Indian Territory Illuminating Oil Company, to drill and properly protect from drainage the 80-acre

oil and gas lease. Three wells were spotted and drilled across the north end of the tract, and it is the contention of the Indian Territory Illuminating Oil Company that these wells were drilled at such points as would reasonably be expected of an operator of ordinary prudence under the circumstances with regard to the interest of both lessors and lessee. The basis for the Oklahoma rule was well stated in the case of Brewster v. Lanyon Zinc Co. (C. C. A.) 140 Fed. 801, decided in 1905, and followed by subsequent cases in this jurisdiction.

The case at bar simply presents a fact situation to which this rule should be applied for a proper disposition of the case. We adhere to our former decisions on this point and will adjust the differences between the parties as measured by that yardstick. As stated in the above-styled cause:

"The object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, and neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which the operations shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interest of both."

The above rule was quoted and approved by this court in the case of Pelham Petroleum Co. v. North, 78 Okla. 39, 188 P. 1069, and was reiterated in Broswood Oil & Gas Co. v. Mary Oil & Gas Co., 164 Okla. 200, 23 P. (2d) 387, and Wilcox v. Ryndak, 174 Okla. 24, 49 P. (2d) 733, and cases cited therein. See, also, Merrill's Covenants Implied in Oil & Gas Leases, p. 189. We reaffirm this rule as the law applying to differences between lessors and lessees with reference to offset drainage on oil and gas leases in Oklahoma. Having announced the rule of law applicable, we now proceed to a statement of the facts.

On November 3, 1927, H. G. Little and wife, R. C. Welch and wife, and Robert H. Jensen and wife, executed an oil and gas lease covering 80 acres of land, being the E. ½ N. E. ¼ section 27, township 11 N., range 3 W., in Oklahoma county, to Charles C. Duncan. Little owned 70 acres and the other lessors owned ten acres. This lease was subsequently transferred to plaintiff in error, Indian Territory Illuminating Oil Company.

On July 9, 1930, H. G. Little, being the owner of the northeast ten acres of said tract of land, conveyed same to the Haynes Drilling Company, in which deed there is the following clause:

"Subject to oil and gas lease dated November 3, 1927, to Chas. C. Duncan, subsequently assigned to Indian Territory Illuminating Oil Company."

This action was commenced October 13, 1931, against Indian Territory Illuminating Oil Company by the plaintiff, Haynes Drilling Company, complaining that the Indian Territory Illuminating Oil Company had not properly developed the northeast ten acres of the lease belonging to plaintiff, in that a well had been located and drilled by another company 166 feet east and 300 feet north of the northeast corner of plaintiff's land, another 165 feet west and 325 feet north of the northeast corner, and defendant was drilling its well in the center of said ten-acre tract. It was alleged that the result of so spacing the wells would be to drain plaintiff's land, so that eventually the ⅛ royalty interest in said ten acres would produce some 25,000 barrels less oil. As a matter of fact, the Indian Territory Illuminating Oil Company location was about 30 feet north of the center of the ten acres in question and three wells were spaced in the north 20 acres of the lease. All three wells crowded the north line by 30 feet and the west well crowded the west line.

Thereafter, the other royalty owners of the entire 80 acres were made parties defendant over the protest of the Haynes Company.

The original petition asked for cancellation only as to the east 3⅓ acres owned by plaintiff. By amendment it later pleaded somewhat similar conditions as to west 3⅓ acres, and asked cancellation of the lease as to that portion also.

The issues being joined, the case was tried to the court, resulting in a judgment and decree canceling the lease in so far as it covered the east 3⅓ acres of the ten acres owned by plaintiff.

The record discloses that on or about August 3, 1931, the Phillips Oil Company completed its well located about 167 feet east and about 300 feet north of the northeast corner of the 80-acre tract covered by the lease from Little et al. This well was the first to reach what is known as the Wilcox sand in that vicinity. It had an initial production of more than 8,500 barrels of oil per day. This well is referred

to in the record and herein as "Phillips-Eggemier No. 1."

Thereafter, the Continental Oil Company commenced a well on a tract immediately west of the Phillips well, and located it 165 feet west and 325 feet north of the northeast corner of the Little et al. tract. That well was commenced September 7, 1931. Said well is referred to in the record and herein as "Continental-Canning No. 1."

The oil and gas lease therein referred to contains the following provisions:

**"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks."**

And:

"It is agreed that this lease shall never be forfeited or canceled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions or stipulations."

About September 18, 1931, defendant Indian Territory Illuminating Oil Company located a well 300 feet south and 330 feet west of the northeast corner of the land covered by its lease, which was about 30 feet north of the center of the ten-acre tract purchased by Haynes Drilling Company.

The Haynes Company objected to the location, and, upon the theory that it was the owner in fee of that ten acres and entitled to one-eighth of all the oil produced from said ten acres, commenced an action in the United States District Court against the Indian Territory Illuminating Oil Company seeking to enjoin the Indian Territory Illuminating Oil Company from further operations toward drilling a well at said location until it had drilled and completed a well at a point approximately 150 feet east of said location, and praying for a mandatory injunction commanding said Indian Territory Illuminating Oil Company to locate and with due diligence drill a well at a point not more than 330 feet south and not more than 150 feet west of the northeast corner of said ten-acre tract. That cause was dismissed on jurisdictional grounds.

The Indian Territory Illuminating Oil Company commenced drilling its well at the original location on or about September 29, 1931. This well is referred to in the record and herein as I. T. I. O.-Little No. 1.

This action was commenced October 13, 1931. The Haynes Company did not recognize as a community lease the oil and gas lease covering lands at the time it purchased its 10 acres. It predicated its action upon the theory that it was the owner in fee of the ten-acre tract and entitled to ⅛ of all the oil produced therefrom, and that the other lessors and their assigns were entitled to no part of the ⅛ of the oil going to the landowner as to that particular tract, and they were not made parties.

The Indian Territory Illuminating Oil Company was then the only defendant. Plaintiff sought to cancel the lease as to that part of the area covered thereby, which it claimed was not adequately protected from drainage of the wells on the adjacent land. Plaintiff in part alleged:

"That by reason of the failure upon the part of the defendant company to take such immediate action in the location and continuous diligent completion of such offset well, as under the circumstances attendant upon the completion of the Eggemier Well No. 1 and the active diligent drilling of the Canning Well No. 1, required, and thereby developing and operating said property as under the circumstances would be expected of an operator of ordinary prudence, having regard to the interests of such operator and the owner of said land; the said lease so given to the above-named defendant company, in so far as the same covers the lands of this plaintiff, did thereby terminate; and that from and after such failure upon the part of the above-named defendant company to immediately commence such offset well and thereafter diligently operate and develop said property, as by all of the attendant circumstances hereinbefore set forth required, the said defendant company is now without rights or privileges, under or by virtue of the terms of said lease or any part thereof: in so far as the same covers the lands of this plaintiff company."

The defendant demurred to the petition, one of the grounds being that the owners of the remaining 70 acres of the land cov-

ered by the lease were necessary parties, and upon the further ground that the plaintiff could not maintain the action alone and that the other royalty owners were necessary parties plaintiff. The demurrer was sustained as to that ground and overruled as to all others.

Thereupon plaintiff filed an amended petition, wherein it alleged that since the filing of the original petition the Continental-Canning No. 1 had been completed as a producing well with a daily potential production of approximately 30,000 barrels; that another well had been commenced by the Slick-Urschel Company directly north of the center of the west five acres of plaintiff's land, referred to in the record and herein as Slick-Dodd No. 1.

That by reason of the failure of defendant to protect plaintiff by immediately commencing the drilling upon plaintiff's lands of an offset thereto, "as an ordinarily prudent operator having regard for the exigencies of the occasion, and the rights of the parties, would do," defendant has breached the implied covenants of the lease, and had thereby, in law, abandoned its leasehold rights as to the west ⅓ of plaintiff's ten acres. Cancellation of the lease as to the east ⅓ and of west ⅓ of the ten-acre tract was prayed for.

At the same time plaintiff filed a motion reciting the order of the court holding, over the objection of plaintiff, that the other owners were necessary parties, and therein moved that the clerk be ordered forthwith to issue summons to each of the parties named: H. G. and Ethel B. Little, Robert H. and Clotilde Jensen, R. C. and Dora Welch, John B. Brandenburg, O. W. Burrough and Ardie Oil & Gas Company, requiring them and each of them to answer setting forth such title and right or interest in the controversy as they or either of them might claim. This motion was sustained.

Thereafter H. G. Little filed an application for leave to intervene, which was granted, and he, the Ardie Oil & Gas Company and Robert and Clotilde Jensen filed their answers and cross-petitions.

The defendant Indian Territory Illuminating Oil Company filed its answer, consisting of a general denial, and pleaded in substance that it had been developing and operating the property as diligently as was practicable under the then uncertain and unstable conditions of the oil market; that it had completed the Little No. 1 well, had

commenced another well some 350 feet west thereof, referred to in the record and here as Little No. 2, and that it was its intention and purpose to drill a third well approximately 300 feet west of Little No. 2. (The third well was subsequently drilled and is referred to in the record and herein as I. T. I. O.-Little No. 3.)

The answer then alleged that the cost of a well in that vicinity was from $100,000 to $125,000. It pleaded the terms and conditions of the lease and particularly paragraph 10 thereof, quoted above, and the clause in plaintiff's deed reciting that it was made subject to defendant's oil and gas lease.

H. G. Little filed his separate answer and cross-petition. The answer is a general denial.

In the cross-petition he pleads the terms and conditions of said lease as contained in paragraph 10 thereof, the clause in plaintiff's deed quoted above, and prayed for a judgment decreeing that all the ⅛ royalty accruing under said lease (the 80 acres as a whole) should be paid to all the defendants except the Indian Territory Illuminating Oil Company in proportion that the acreage owned by each separate owner bears to the whole acreage covered by the lease. He then pleaded that he did not know whether defendant Indian Territory Illuminating Oil Company had properly and diligently developed said lands, but was informed and believed it had, but, in the event the court found it had not, then he prayed that the lease be canceled as to that part of the land then owned by him (60 acres).

The Ardie Oil & Gas Company filed its answer and cross-petition. The answer was in the nature of a general denial. The cross-petition alleged an ownership of an undivided one-half interest in the minerals as to certain blocks of land embraced within the 80 acres, consisting of ten acres, acquired from Jensen and wife after the execution of the oil and gas lease.

Further allegations were made substantially the same as in the cross-petition of Little, except it did not allege that it was informed and believed that defendant Indian Territory Illuminating Oil Company had diligently and properly developed the land.

Robert and Clotilde Jensen filed their answer and cross-petition substantially the same as that of Little, asserting their interest to be the ownership of an undivided

one-half interest in the same ten acres as that claimed by the Ardie Oil & Gas Company.

Trial was commenced July 12, 1932, resulting in a judgment and decree canceling the lease as to the east one-third of the ten acres owned by plaintiff; that neither Little, the Ardie Oil & Gas Company, nor the Jensens and Brandenburg, who it appears had bought one-half of the remaining interest of the Jensens, but who had not been served with summons, but filed his general appearance in the cause between the date of the trial and the date of the judgment and decree, were entitled to any royalty whatever from the lands embraced within the three and one-third acres as to which the lease was canceled; holding the lease a community lease and valid in the hands of the Indian Territory Illuminating Oil Company, as to the remaining 76 2/3 acres, and that all the royalty holders, including Haynes Drilling Company, were entitled to share in the ⅛ royalty in proportion that the acreage held by each bore to the whole of the remaining 76 2/3 acres.

The journal entry of judgment recited that the Haynes Drilling Company had by written agreement executed since the trial, fully settled and satisfactorily compromised all controversial matters as between it and Robert H. Jensen, Clotilde Jensen, John B. Brandenburg and Ardie Oil & Gas Company.

Plaintiff, Haynes Drilling Company, excepted to the part of the decree allowing Little and the other royalty holders to participate in the ⅛ royalty from the 6 2/3 acres of the land owned by it, covered by the lease and held to be valid in the hands of the Indian Territory Illuminating Oil Company, and further excepted to any allowance to it of any proportion or right to share in the royalty production upon any part of the 80 acres beyond the limits of the ten acres owned by it (purchased from Little).

From the decree canceling the lease as to the east 3⅓ acres, the Indian Territory Illuminating Oil Company appeals.

Little appealed from that part of the decree canceling the lease as to said 3⅓ acres and denied the 6/8 of the ⅛ royalty from said 3⅓.

From that part of the decree allowing Little to participate in the ⅛ royalty from the 6 2/3 acres upon which the lease was not canceled, the Haynes Drilling Company appealed.

After the appeals were perfected the Haynes Drilling Company and Little entered into a written agreement wherein they agreed to dismiss with prejudice their respective appeals. It was also agreed therein that:.

"This agreement shall be binding upon the heirs, successors and assigns of the parties hereto, and an executed copy thereof shall be filed with the Clerk of the Supreme Court in said cause No. 24422 (this cause) for the advice of the Supreme Court."

A copy thereof was not promptly filed, but upon application of the Indian Territory Illuminating Oil Company an order was made requiring the Haynes Drilling Company to file a copy of said agreement, and the agreement with the other royalty owners. The Haynes Drilling Company complied with the order, under protest, and moved the court to vacate the order mentioned and for leave to withdraw said compromise agreements.

But the Haynes Drilling Company in its brief earnestly contends that Little and the other royalty owners by said agreements ratified and adopted the acts of the Haynes Drilling Company in the injunction suit brought in the United States District Court, and subsequently dismissed, which is claimed to be a sufficient demand on the Indian Territory Illuminating Oil Company to adequately protect the leased premises from drainage, and notice of intention to commence action to cancel the lease for failure so to do.

In other words, we are asked to set aside the order requiring the filing of said agreements, and permit the withdrawal thereof, but at the same time consider them for the benefit of the Haynes Drilling Company on the question of ratification.

If these settlement agreements are to be considered for one purpose, they must be considered for all purposes. The motion to set aside the order requiring same to be filed, and for leave to withdraw, is denied.

The cross-appeals of Little and the Haynes Drilling Company having been dismissed, it is necessary to consider only the questions raised by the plaintiff in error, Indian Territory Illuminating Oil Company.

The first proposition presented is that, in order to maintain this action, it was necessary that the plaintiff, Haynes Drilling Company, and all of those owning royalty interests under the 80-acre community lease, serve a written demand upon the defendant Indian Territory Illuminating Oil

Company before the commencement of this suit to drill the well at the location contended for by the plaintiff, and that all royalty owners serve notice that proceedings to forfeit the lease would be instituted upon failure to comply with the written demand. It is not necessary to decide the question at this time as to whether in a case where owners of separate undivided interests in land join in the execution of an oil and gas lease, all must concur in an election to declare a forfeiture for failure to comply with an implied covenant to drill and that all covenantees must join in an action on such covenant. This, for the reason that the Haynes Drilling Company filed this action on the theory that it claimed to own the entire royalty interest under the ten acres of lands on which it sought to cancel an oil and gas lease for failure to properly develop. Since the Haynes Drilling Company claimed adversely to Little and all the other owners of the ⅛ royalty interest in the lease as a whole, it could not be expected that Little and the other owners should become parties plaintiff. To do so would have been against their interests to the extent of the interest they claimed and clearly had, that is, in the ⅛ of all the oil produced from the entire 80 acres. It was sufficient that they be made parties defendant. Thereby the rights of all the parties as to all the issues could be fully protected and a multiplicity of suits avoided. Thus the ultimate object of the Haynes Drilling Company was to cancel a portion of the lease, drill a well thereon, take 8/8 of the oil therefrom and also to receive all of the ⅛ royalty to be received from oil produced by the Indian Territory Illuminating Oil Company on the remainder of the 10-acre tract, or from Little No. 1 well.

The trial court properly made the owners of royalty interests adverse to plaintiff's claims parties defendant. Therefore, we hold that, as applied to the fact situation here, the Haynes Drilling Company could maintain this action as plaintiffs and bring in all of the other royalty owners as parties defendant.

As to the question of maintaining an action to cancel the lease on the 10 acres without written notice to the Indian Territory Illuminating Oil Company to develop the same, we adhere to the general rule that a court of equity will not cancel an oil and gas lease for failure to comply with implied covenants to develop, unless proper notice has been served upon lessee that

a failure to drill will be considered grounds for cancellation of the lease. There are, however, circumstances under which the giving of notice would be a vain and useless thing and such notice is not necessary. The suit filed in the United States District Court by the Haynes Drilling Company and the answer of the Indian Territory Illuminating Oil Company denying any right to compel it to drill at any particular location on the ten acres in question was sufficient notice and sufficient denial. We say, therefore, where positive demand is made by the lessor for the lessee of an oil and gas lease to comply with certain implied covenants in the lease and the lessee manifests a definite and positive intention not to comply with such demand, lessor may immediately commence action without further notice for forfeiture of the lease.

As above stated, the Haynes Drilling Company was not only insisting upon the forfeiture of a part of the lease as to the Indian Territory Illuminating Oil Company, but was also claiming adversely to Little and the other owners of ⅛ royalty interest in the lease as a whole, in that it claimed that it was entitled to all the ⅛ of the oil produced from the particular ten acres owned by it. In such circumstances, it could not be expected that Little and the other owners should become parties plaintiff.

As stated above, it was sufficient that they be made parties defendant.

The second proposition presented is that the defendant Indian Territory Illuminating Oil Company would have been justified under the law in this jurisdiction to have ceased operation on this lease as soon as plaintiff filed the suit, and that it was not incumbent upon it to drill one well upon said ten acres so long as this suit for the cancellation of the lease as to all or a part of that ten acres was pending.

This contention is not well taken. It may have merit as to the plaintiff, Haynes Drilling Company, if it be conceded that plaintiff was the owner of the entire royalty from said ten acres. But the other owners were interested as well as plaintiff and none of them had asked for a cancellation of the lease. At least two of them were asserting their right to participate in the royalty from the well or wells drilled upon the ten acres under the lease and were insisting that the lease be not canceled as to that ten acres. The duty still remained upon the Indian Territory Illum-

inating Oil Company to drill for their benefit.

The two other propositions presented by plaintiff in error may be considered together. They are that a court of equity will generally refuse to aid in the enforcement of a forfeiture unless the forfeiture is more consonant with the principles of equity, justice and morality than to withhold such relief. And that the standard by which the defendant's duty to develop the lease must be measured is that which a reasonably prudent person would have done under like or similar circumstances at the time.

This brings us to a consideration of the evidence.

The controversy arose over the question of where the northeast well should have been located upon the 80 acres covered by the community lease. In view of the fact that a producing well had been completed on other lands some 300 feet north and 166 feet east of the northeast corner of the land here involved and another had been commenced and was drilling on still other land 165 feet west and 325 feet north of said corner, the situation called for the prompt commencement of a well on the northeast ten acres of the 80 acres covered by the lease. The plaintiff being the owner of the ten acres, subject, of course, to the community lease on the entire 80 acres, contended that the well should be located not more than 325 feet south and not more than 165 feet west of the northeast corner.

The Indian Territory Illuminating Oil Company located its well some 300 feet south and some 330 feet west of said corner. The result of the suit in the United States District Court to compel the location of a well at the point contended for by plaintiff was a dismissal without prejudice upon jurisdictional grounds. Thereafter plaintiff commenced this action.

The position of plaintiff was that the leased premises could only be properly protected from drainage by the drilling of a well directly south of the one then drilling on the acreage to the north and not farther west from the east line than the one then producing to the northeast.

We come now to a consideration of the evidence in this case and the application of the rule of law, supra, with reference to the duty of the lessee to protect against drainage or have his lease canceled. There can be a breach of covenant for the exercise of reasonable diligence, **though the** lessee be not guilty of fraud or bad faith. While this is true, yet the rule announced in Brewster v. Lanyon Zinc Co., 140 Fed. 801, and Pelham Petroleum Co. v. North, 78 Okla. 39, 188 P. 1069, has been approved many times by this court and applies to the facts here. (See Wilcox v. Ryndak, supra.) It is that no breach can occur "save where the absence of such diligence is both certain and substantial in view of the actual circumstances at the time as distinguished from mere expectations on the part of the lessor and conjecture on the part of mining enthusiasts. The large expense incident to the work of exploration and development and the fact that the lessee must bear the loss if the operations are not successful, require that he proceed with due regard to his own interests as well as those of the lessor. No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them.

Thus, upon consideration of the foregoing elements, we held in Wilcox v. Ryndak, supra, that a lessee who had drilled but one well in the center of a 12-acre tract was not guilty of a breach of the implied duty to protect against drainage, notwithstanding the fact that the tract was surrounded by other wells, some already located when the lessee's well was drilled and some much closer to the boundary of the tract on the opposite side thereof than the well drilled and operated by the lessee. The case illustrates the extent to which this court has gone in condoning the acts of a lessee in failing to drill unprofitable wells. It presented a situation more favorable to the lessor than the case now before us.

It should be observed at this point that the Indian Territory Illuminating Oil Company, lessee, was entitled to receive 7/8 of the oil produced from the ten acres in question and the remaining 70 acres of the community lease, and that the Haynes Drilling Company was due only ⅛ of ⅛, or 1/64, of the oil produced, both under the 10 acres and under the remaining 70. Counsel for the Haynes Drilling Company erroneously refers to the well known as Little No. 1 as "10-acre offset." As a matter of fact, the Indian Territory Illuminating Oil Company spotted three wells across this north 20 acres (which includes the Haynes ten), whereas, if these had been 10-acre offsets on the north 20 acres, there would only be two. The Haynes Drilling Company was entitled to receive

royalty from all of the three wells. Apparently, it drilled its well on the theory that it was entitled to protect from improper drainage its share of oil under the 10 acres in question, and contracted to spend approximately $100,000 in the drilling and equipping of a well to protect this drainage. This also in the face of the fact that it had bought its 10 acres subject to the community oil and gas lease and in which lease was a clause providing there could be no forfeiture for failure to comply with the implied covenants until a judicial determination that such failure to comply actually existed.

Plaintiff produced as witnesses two eminent geologists, Irving Perrine of Oklahoma City, and Ralph Arnold of Los Angeles, Cal. Their testimony was based largely upon the conditions existing at the date of the trial, which was about July 12, 1932. At that time, Continental-Canning No. 1 had been completed and was producing; Slick-Dodd No. 1 had been completed and was producing; I. T. I. O.-Little No. 1 and No. 2 had been completed, and a well located some 330 feet east and 300 feet south of the northeast corner of the ten-acre tract had been completed and was producing (this well was known as I. T. I. O.-Glendale No. 1) ; I. T. I. O.-Little No. 2 is located 300 feet south of the north line of the 80-acre tract and just west of the west line of the Haynes Drilling Company's 10-acre tract.

The testimony of these two expert witnesses for plaintiff was, in substance, that there is a formula, more or less standard and used by geologists, more or less universally, for computing the ultimate recovery of oil. That by using this formula they were thereby able to determine with approximate certainty the ultimate recovery from the Wilcox sand under the Haynes 10 acres should be 77,778 barrels per acre, or a total of 777,780 barrels. These witnesses define offset wells as "Wells directly offsetting each other on the line at right angles to the boundary line and at an equal distance from the boundary line," and they gave it as their opinion that there was no well on the Haynes 10 acres fully offsetting the Phillips-Eggemier No. 1, and no well on said tract fully offsetting the Continental-Canning No. 1, and none offsetting the Slick-Dodd No. 1. By the formula they used they estimated that under the plan of development insisted on by Haynes Drilling Company there would be a total recovery of some 799,390 barrels

from the 10-acre tract, but that if the plan adopted by the Indian Territory Illuminating Oil Company were followed a total recovery of only 513,334 barrels would be realized, making a difference of some 286,-000 barrels.

In making these calculations, however, apparently they failed to take into consideration the fact that the Indian Territory Illuminating Oil Company had three wells spotted across the north 20 acres, which wells were located 30 feet north of an east and west line through the center of said 10-acre tract. This would materially reduce the alleged drainage, if any was being suffered. Plats were introduced in evidence showing the various drainage areas of the several wells in question.

Plaintiff's evidence was largely opinion evidence based on estimates made by its witnesses. There was considerable evidence, however, as to the actual production down to the date of trial which tended to confirm their theory.

In passing it may be said that if the theory of plaintiff was correct as to the ultimate recovery, the difference in production would have made a difference to plaintiff, if right in his contention that he was entitled to all the 1/8 of the oil produced from that particular ten acres of approximately 30,000 barrels of oil. But, if as contended for by the defendants, and found and correctly held by the trial court, plaintiff was entitled to but 1/8 of the 1/8 royalty from that particular tract, the difference to plaintiff would have been approximately 4,000 barrels and not 30,000 barrels, and would have required an additional expenditure by defendant Indian Territory Illuminating Oil Company of from $100,000 to $125,000 in drilling an extra well, besides extra operating expenses.

The contention of the Indian Territory Illuminating Oil Company was that it had located its three wells across the north side of the 80-acre community lease under the conditions then known to exist at such places as would properly protect the lease from drainage and produce the oil therefrom in a manner to the best interests of all concerned. To support its contention it introduced evidence showing that it employed competent and experienced geologists and practical oil operators whose advice it followed in locating the first well on the lease. Two of these witnesses were William W. Clawson, a graduate in geology of the University of Kansas, with a degree

in mining engineering, with some seven years' experience in the Oklahoma City field, and Homer H. Charles, also a graduate of the University of Kansas in geology, a B. S. degree, a mining engineer, with some five years' experience in the Kansas oil fields and in the Oklahoma City field since July, 1928.

They testified at length as to their advice in the location of the well, which was, in substance, that the then known geological conditions in that vicinity were that the Phillips-Eggemier well was located near the eastern edge of the Wilcox sand in that vicinity, that it was high on the structure, and that the Wilcox sand was 70 feet thick in the Phillips-Eggemier well; that it became thicker to the west and south or the southwest and also dipped or became lower to the south and west; that two elements entered into the ultimate recovery, thickness of the sand and the location of the well on the structure. That a well located high upon the structure would decrease rapidly in oil production and increase rapidly in relative gas production, and would go to gas much sooner than one located on the structure. That it was because of these conditions that the Little No. 1 was located 330 feet west of the line rather than 165 feet; that the geologists advised such location because they thought the well would be a much better well and ultimately recover more oil for all concerned.

As to the geological theory they were corroborated by the testimony of Edwin Thompson, geologist for the Phillips Petroleum Company, Harold S. Thomas, geologist for the Slick-Urschel Company, and R. D. Jones, geologist, who is president of the Ardie Oil & Gas Company.

There was also a great deal of evidence concerning the production of the wells down to the time of the trial tending to confirm the theory of defendant, particularly with reference to the increased gas ratio in the well highest upon the structure.

In addition thereto, Mr. Jones, for the Ardie Oil & Gas Company, and Mr. Little in his own behalf, testified that they were satisfied with the manner in which the Indian Territory Illuminating Oil Company was developing the property and were of the opinion that their interests were as well or better conserved.

Wirt Franklin, an experienced producer, testified from his experience as an oil operator, and the knowledge he had of conditions in the Oklahoma City field generally, and gave as his opinion that the oil that would be produced from the three wells located on the Little lease by defendant company and the drainage of those wells would thoroughly protect the property against drainage from the wells which offset it both north, east and northeast. He was of the opinion:

"A. I would say in answer to that question and considering the distances from the line and the drainage area of the wells on the Little lease, is all that prudent, businesslike operation would require, and that the oil that would be produced from these three wells located on the Little lease and the drainage of those wells would thoroughly protect the property from the wells which offset it, both north, east and northeast. I notice, for instance, that the wells on the Little lease are 32 feet closer to the line than the wells on the lease north of it and thereby they have some advantage in drainage from a north and south standpoint, while No. 1 Little well is the same distance from the east line as its east offset, 330 feet. While the wells are not directly opposite one another north and south, there are on the tract the same number of wells as there are on the property to the north, and if there was any difference in locating these wells as they are located, it would be to the advantage of the Little lease, because it would give these wells a little bigger drainage area than if they were directly opposite the wells on the north."

As a whole, the record shows, at most, a difference in expert opinion as to where the wells should have been located on the Little lease. Actual measurements show that Little No. 1 is closer to the Continental-Canning than it would be had it been located at the point contended by plaintiff. Little No. 2 is closer to Slick-Dodd No. 1 than a well located an equal distance from the property line and directly south thereof would be. The well drilled on the east known as the I. T. I. O.-Glendale is 330 feet east of the line, the same distance as Little No. 1 west of the line. So that, based upon distance alone and wholly disregarding geological conditions, it does not appear that there could have been any drainage, much less a substantial drainage, of the three wells across the north line of the Little property. Based upon distance alone, plaintiff might have some cause to complain of drainage to the northeast by Phillips-Eggemier No. 1. This will be discussed hereafter. In addition to the witnesses already mentioned officials and practical producers of long experience connected with the Indian Territory Illuminat-

ing Oil Company operations in the Oklahoma City field testified, in substance, that the development of the ten-acre tract in question by defendant company was the proper development under all the known circumstances at that time, and that the wells as drilled would protect said tract against any substantial drainage from wells on adjacent leases.

After reviewing the evidence, we will now consider the correctness of the trial court's judgment. The plaintiff sought cancellation of a lease as to that portion of the Haynes 10-acre tract which was being subjected to drainage by the manner of development employed by the defendant. This means, of course, under the rule applicable in such cases to that portion being subjected to substantial drainage.

The trial court canceled the lease as to the 3⅓ acres along the entire east side of the entire 10-acre tract. Under the rules of law heretofore laid down, the lease could not be canceled in this suit on any portion of the 10-acre tract which was not being subjected to substantial drainage.

An examination of the various plats offered in evidence discloses that Little No. 1 and South Glendale No. 1 to the east exactly offset each other. Each is located the same distance from the north property line and equidistant and at right angles from the property line separating them.

According to the expert witnesses introduced by each side, where two wells are close enough to each other for each to exert a drainage pull one against the other (where conditions are uniform and that will have to be assumed in this case, there being no evidence to the contrary), the point at which the pull will be equalized or neutralized is the point equidistant between the wells. If the point equidistant between the wells is the property boundary line, then the wells equalize, offset, each other and there is no drainage at least no substantial drainage. Applying this yardstick, there is no drainage lost to the royalty owners in the community lease in the area between Little No. 1 and South Glendale No. 1. Applying the same rule to the Phillips-Eggemier No. 1 and Little No. 1, we find that these wells are close enough to each other for each to exert a pull against the other. According to expert witnesses, the pull normally will be applied—obviously—at a point equidistant between the two. By consulting the plats and considering the actual measurements of distance, we find

that the point equidistant between these two wells falls slightly inside the boundary line of the Haynes 10-acre tract to the extent that the Phillips-Eggemier drainage arc extends into the Haynes 10-acre tract. Drainage has been suffered for that part of the 10-acre tract inside said drainage arc and royalty on this fractional part of an acre lost to the royalty owners under the community lease. By applying the same test as between Little No. 1 and Continental-Canning No. 1 it will be found that the drainage arc of the Continental-Canning extends over a small area in the extreme northeast corner of said 10-acre tract, that is not included in the drainage arc of Little No. 1. Therefore, that small area is likewise being subjected to some drainage and a small royalty likewise lost.

The foregoing statements with reference to location and drainage may be better understood by reference to the plat on page 430.

The two small sectors thus subjected to offset drainage in the northeast corner of said 10-acre tract by the Phillips-Eggemier and Continental-Canning wells will probably represent less than three-fourths of an acre of the 10-acre tract. The exact acreage is a problem which can be comparatively accurately computed. Neither the Phillips-Eggemier nor the Continental Canning exerts any undue drainage influence on the area between Little No. 1 and South Glendale No. 1, and certainly none on the 10-acre tract lying to the south of these wells. All the pull or drainage which might be exerted against this area, if it was not for Little No. 1 and South Glendale No. 1, is completely neutralized or offset by the pull of said wells. This pull or neutralization is the fundamental basis of requiring offset wells to be drilled.

From this analysis of the evidence and the situation as it existed, it is clear that the judgment of the trial court canceled the lease as to about three acres, which could not possibly be suffering drainage at the hands of the Phillips-Eggemier and Continental-Canning well, and a judgment in that respect cannot be sustained.

There still remains to be determined what relief should be given the Haynes Company on account of the drainage of the two small sectors of about 2/3 or 3/4 of an acre referred to above in the northeast corner.

Of course, there was no offset drainage at the location where the Haynes well was drilled on said 10-acre tract. Therefore,

H. L. 1, 2 & 3 represent what the Haynes Company contends would have been proper offsets. H. L. No. 1 was drilled by them pending this appeal. Nos. 1, 2 and 3 I. T. I. O. represent the wells actually drilled by that company.

that portion of the lease was not subject to cancellation, and the Haynes Drilling Company acted at its peril when it entered and drilled the well and commenced producing oil at that particular location.

Three wells known as the Continental-Canning No. 1, Slick-Dodd No. 1, and Slick-Dodd No. 2, offset the north line of the 80-acre community lease involved, each being approximately 330 feet from this north line. All three of the Indian Territory Illuminating Oil wells (Little No. 1, Little No. 2, Little No. 3) are about 30 feet closer to the north property line than are these wells to the north. Whatever drainage may occur by reason of Slick-Dodd No. 1, not being offset by a well immediately to the south, is probably more than compensated for by the drainage arc of Little Nos. 1 and 2, which extends farther into the drainage area between Slick-Dodd Nos. 1 and 2 and Slick-Dodd No. 1 and Continental-Canning than does the drainage arc of those wells

into the Little 10-acre tract. This follows since the Little wells are near the north property line.

A court of equity should grant such relief as will do justice between the parties. In Foster v. Hoff, 37 Okla. 144, 152, 131 P. 531, 534, this court held:

"And equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented. Varner v. Rice, 44 Ark. 251; Texas v. Hardenburg, 10 Wall. 89, 19 L. Ed. 839."

The trial court found there had been drainage suffered as to the entire east 3⅓ acres of the Haynes 10, which finding cannot be sustained. The finding of the trial court was correct only as to the two small sectors in the northeast corner of said 10-acre tract. If we assume that the drainage on this small portion has been substantial,

then, on the record before us, the plaintiff is entitled to the cancellation of the lease as to those two sectors only. We doubt seriously, however, if such a decree at this time would do substantial justice to the plaintiff, the Haynes Drilling Company. Payment for this interest in the value of the small amount of oil lost through drainage of the two sectors in question would more nearly comport with justice and right in the premises, that is, if we give the Haynes Drilling Company credit for acting in good faith in drilling Haynes No. 1.

In the case of Murdock v. Sure Oil Corporation, 283 S. W. 4, the Supreme Court of Arkansas held:

"Where assignees of lease substantially developed property by drilling oil wells on it near boundary lines, equity will not decree forfeiture and cancellation of assignment for failure to drill protection wells to prevent escape of oil and gas from leased premises through wells on adjoining land, but will remit lessor to his claim for damages."

It is further stated in the opinion:

"There is nothing in the evidence indicating an effort on the part of the lessees to defraud appellants, but only a difference of opinion between appellants and appellees, and for that matter between the witnesses, as to whether it would be good business judgment to drill the offset wells contended for. We think good faith on the part of appellees was manifested by the amount of money they expended in the development of the lease and that this good faith should shelter them from the harsh remedy of being compelled to pay the whole consideration in cash on account of a partial breach in failing to drill the offset wells demanded by appellants."

From the evidence we find that the Indian Territory Illuminating Oil Company acted in good faith, though its judgment might not have been perfect in its location of its wells on the community lease. Equity abhors a forfeiture, and the Haynes Drilling Company failed to establish a sufficiently inequitable situation to justify a decree of cancellation. The Indian Territory Illuminating Oil Company drilled its three wells on the north side of the lease at a cost of about $300,000. A difference of opinion and mistaken judgment by a few feet as to the proper location of these wells does not justify a cancellation of the lease. On the other hand, the Haynes Drilling Company should not lose the sum expended in drilling and equipping its wells. Since this is an equity case, our judgment should comport with what we believe is fair and

equitable under all the circumstances between the parties.

Proper relief can best be afforded in this case through the allowance of damages in lieu of cancellation. The judgment of the trial court was not superseded in this action. The Haynes Drilling Company has drilled a well on the portion of the property on which the lease was canceled. There has been a change in the situation of the parties since the litigation was commenced. Furthermore, many of the facts developed at the trial were not anticipated by or known to the plaintiff when the action was commenced.

While in an equitable action the simple and single relief of compensatory damages will not ordinarily be accorded, the rule is not without its exceptions and limitations. As said by Pomeroy on Eq. Jur. (4th Ed.) vol. 1, p. 374, par. 237:

"If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages."

(Note, also, supplemental opinion in Canada v. City of Shawnee, 179 Okla. 53, 64 P. (2d) 694.)

Furthermore, complete relief in this case involves an element of accounting, injected into the case by the production of oil by the Haynes Drilling Company. Under the circumstances we deem it incumbent on us to adjust the monetary differences of the parties without relegating them to a new action for damages and a complete retrial of the case.

Accordingly, the judgment of the trial court is reversed, with directions to enter judgment in favor of the Haynes Drilling Company and against the Indian Territory Illuminating Oil Company for the sum of $100,000, the stipulated cost of drilling and equipping Haynes No. 1 well, with interest on said sum at the rate of 6 per cent. from the date this opinion becomes final. It is further ordered that the Haynes Drilling Company have a lien on the well and prod-

ucts therefrom for said $100,000 in accordance with the terms by which the same is awarded as herein set forth.

It is hereby decreed that the Haynes No. 1 well and all equipment thereof and the future production of oil therefrom, which represents the 7/8 working interest thereof, be the property of the Indian Territory Illuminating Oil Company. It is 'further decreed that all of the oil runs or proceeds thereof of the 7/8 working interest heretofore produced from said Haynes No. 1 well, be declared to be the property of the Indian Territory Illuminating Oil Company. Except a sufficient portion thereof to repay Haynes Drilling Company all of the necessary operating expenses actually incurred by the Haynes Drilling Company in the operation of such well; such amount of operating expenses to be determined by the trial court, and paid to Haynes Drilling Company upon order of the trial court.

The judgment of the trial court is reversed, however, with directions to have an accounting between the Haynes Drilling Company and the Indian Territory Illuminating Oil Company as to the reasonable cost of the production of said oil heretofore produced, which resulted from the operation of the said well from the date of its completion until operation thereof is begun by the Indian Territory Illuminating Oil Company. The judgment of the trial court is also reversed to determine the damages, if any, which the Haynes Drilling Company may have sustained by loss from drainage as may be determined by the trial court and not inconsistent with the pronouncements herein.

OSBORN, C. J., and WELCH, CORN, and HURST, JJ., concur. RILEY, J., concurs specially. BAYLESS, V. C. J., and PHELPS and GIBSON, JJ., dissent.

RILEY, J. (concurring specially). My views in the cause at bar were stated in the first opinion adopted by this court on November 11, 1935. I agree that the judgment of the trial court was in error in canceling the lease under which plaintiff in error was diligently operating and developing its lease. I find, under the evidence, no cause for an inquiry upon remand as to damages to defendant in error for drainage. Since plaintiff in error was acting as a prudent operator was required to do, I find no reason for the allowance of cost of drilling and equipping Haynes No. 1 well, save and except suggestions contained in briefs of both parties on petition for rehearing when

delay and doubt in final decision caused concessions to be made.