**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**CITY OF PAWHUSKA, Oklahoma,**
**Defendant-Appellee.**

No. 73–1940.

United States Court of Appeals,
Tenth Circuit.

Sept. 3, 1974.

Carl Strass, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., Nathan G. Graham, U. S. Atty., Jack M. Short, Asst. U. S. Atty., and Edmund B. Clark, Atty., Dept. of Justice, on the brief), for plaintiff-appellant.

Robert S. Rizley, Tulsa, Okl. (Rizley, Prichard, Ford, Norman & Reed, Tulsa, Okl., W. Robert Wilson, and Files, Mahan, Wilson & Young, Pawhuska, Okl., on the brief), for defendant-appellee.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This action by the United States as the trustee for the Osage Tribe of Indians seeks damages for loss of tribal mineral deposits by inundation of about 291 acres of land by a city reservoir. The trial court held for the City. The appeal concerns the sufficiency of the evidence to sustain the trial court's findings and availability of certain legal defenses pertinent to litigation over oil and gas leases. We reverse.

The situation is unique because the government created separate interests in

the surface of Osage lands and in the underlying minerals, reserving the latter in trust for the Tribe. Beginning in 1953 the Tribe executed a number of departmental oil mining leases, all of which were for five years or as long thereafter as oil was produced in paying quantities. The Tribe received a 16⅔% royalty interest in extracted oil and gas.

In 1956 defendant-appellee City of Pawhuska brought condemnation proceedings against the surface owners to acquire land for a municipal reservoir. City recognized that it could not acquire the mineral estate because it was held in trust for the Tribe by the United States. One tribal lessee had started drilling operations on the land but was stopped by city police. The government sued City to enjoin it from interfering with its lessees. City then amended its condemnation complaint to include the lessees. The court dismissed the injunction action without prejudice. City settled with the lessees, but no compensation was ever paid to the Tribe. The complaint in the instant action alleges that the Tribe has been deprived of useful access to, and all benefits of, the oil and gas underlying the reservoir to its damage in the amount of over $200,000.

■ The controversy centers around the trial court's Finding No. 11, which covers two subjects. The court finds that (1) the subject lands "are being adequately drained of the oil and gas underlying said quarter sections by the wells producing oil on portions thereof," and (2) it would not be economically feasible for a prudent operator to drill additional wells "because of the cost and expense of drilling the same even if no lake were present."

The record in this case is unsatisfactory. At the start of the trial the judge stated his antagonism to the position of the government and it continued throughout. Whatever the reason may be, the facts were not well developed. The record is devoid of any evidence that the oil and gas underlying the reservoir are being adequately drained by on-shore wells. Government witness Lynn testified that considerable space under the reservoir could not be adequately drained from on-shore locations. He estimated that 470,200 barrels of oil could be recovered from under the reservoir which would provide the Tribe with $219,584 in royalties at a projected price of $2.96 a barrel for the oil. Government witness Daly fixed the Tribe's loss of royalty because of the reservoir at $220,846. This testimony of inadequate drainage by on-shore wells is challenged only by tenuous inferences from unsatisfactory evidence.

The second part of Finding No. 11 is that the underlying oil could not be profitably extracted "even if no lake were present." We do not equate adequate drainage with profitable extraction. Hence, the second part of the finding is not available to bolster the first part. Nor can the second part stand alone. City's witness Kepplinger admitted that 900,000 barrels of oil had been produced from seven quarter sections surrounding the reservoir. At the same time he said that the 291 acres under the reservoir would not be worth drilling. The reasons which he gave for this conclusion are not well developed and do not convince us. Kepplinger was a member of the commission appointed by the court to appraise the value of the interests of the lessees in the condemnation against them. A stipulation of the parties shows that amounts varying from $1,100 to $6,250 were fixed for seven tracts. We cannot reconcile that appraisal with either Kepplinger's testimony or the finding of infeasibility of drilling "even if no lake were present." The trial court rejected the offer of the government to prove by an oil operator that he would drill if the reservoir were not there. The record does not sustain Finding No. 11 whether it is taken as a whole or as two separate findings.

■ City seeks to avoid the questions of adequate drainage and infeasibility by reliance on (1) the Tribe's failure to demand development, and (2) the prudent operator rule. Oklahoma has held

that an action for lease forfeiture for failure to develop cannot be maintained in the absence of notice that forfeiture will result from failure to develop. Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P.2d 624, 630. The opinion also says that: "There are, however, circumstances under which the giving of notice would be a vain and useless thing and such notice is not necessary." Ibid.

■■ The prudent operator rule imposes an implied duty on a lessee "to do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having a rightful regard for the interest of both the lessor and lessee." Trust Co. of Chicago v. Samedan Oil Corp., 10 Cir., 192 F.2d 282, 284, a case construing and applying Oklahoma law. In Magnolia Petroleum Co. v. Wilson, 10 Cir., 215 F.2d 317, 318, we recognized that in Oklahoma the prudent operator rule, like other rules of equity, "is not inflexible."

■ The record before us does not permit any rational conclusion that City is either a bona fide or prudent operator. City wanted the land for a reservoir site and forcibly ejected one of the Tribe's lessees. By condemnation City obtained the interests of the Tribe's lessees but did not compensate the Tribe for any subsurface mineral interest. Any demand to drill would have been futile because drilling was incompatible with City's use of the land.

No need exists to determine whether the burden is on the government or City to establish whether a prudent operator would drill. Cf. Magnolia Petroleum Co. v. Wilson, 215 F.2d at 319. Any claim of economic infeasibility based on the cost of platform or directional drilling is immaterial. Those types of drilling are needed only because of the reservoir. Without it, direct drilling would be possible. The potential of direct drilling is shown by the fact that one of the Tribe's lessees had moved equipment on the land to drill and was prevented from drilling by City's use of force. The prudent operator rule has no application to the facts presented.

■■ The complaint seeks monetary damages for the loss of the Tribe's mineral interest. If that interest has any value, the Tribe has not been compensated for its loss. Property which the United States holds in trust for the Tribe cannot be taken without just compensation. The decision ought to be based on the equities of the situation. The interests of City and the Tribe must be accommodated in the best way possible.

We reject the legal defenses of City. Finding of Fact No. 11 is without record support and is clearly erroneous. We have a "definite and firm conviction that a mistake has been committed." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

Reversed and remanded for a new trial.