**UNITED STATES of America, Plaintiff-Appellant, Cross Appellee,**

v.

**CITY OF PAWHUSKA, OKLAHOMA, a Municipal Corporation, Defendant-Appellee, Cross Appellant.**

Nos. 76–1456 and 76–1457.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 20, 1977.

Decided Dec. 15, 1977.

Glen R. Goodsell, Dept. of Justice, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Washington, D. C., Nathan G. Graham, U. S. Atty., Kenneth P. Snoke, Asst. Atty. Gen., and Carl Strass, Dept. of Justice, Tulsa, Okl., on brief), for plaintiff-appellant, cross appellee.

W. Robert Wilson, Pawhuska, Okl. (of Kane, Kane, Wilson & Mattingly, Pawhuska, Okl., and Robert S. Rizley of Rizley, Prichard, Ford, Norman & Reed, Tulsa, Okl., on brief), for defendant-appellee, cross appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

McWILLIAMS, Circuit Judge.

The United States, as trustee for the Osage Indian Tribe, brought the present action against the City of Pawhuska, Oklahoma in the United States District Court for the Northern District of Oklahoma. The action is based on continuing trespass and seeks monetary damages for the Tribe's loss of access to certain tribal mineral interests underlying a reservoir maintained by the City. The first trial of this matter resulted in a judgment in favor of the City, the trial judge holding: (1) that "even if no lake were present," the oil underlying the reservoir could not be profitably extracted; and (2) that the oil underlying the reservoir is already being "adequately drained" by "on shore" wells. On appeal, we held that each of these findings was clearly erroneous and reversed the judgment, remanding the case for a second trial. See *United States v. City of Pawhuska,* 502 F.2d 821 (10th Cir. 1974).

Upon retrial the trial judge entered judgment in favor of the United States and against the City in the sum of $42,932. The trial judge found that the tribal right to capture minerals in place by exploration and extraction had a monetary value of $50 per acre, and that a total of 858.64 acres had been "consequentially affected" by the City's reservoir. Multiplying 858.64 by 50, the trial judge arrived at the figure of $42,932.

The trial judge further found and ordered that "from the date of payment of such judgment, the City is vested with fee title derived from both the surface and mineral estates." The trial judge alternatively found and ordered that, in the event it later be determined that the City of Pawhuska does not hold such rights, "the City of Pawhuska, Oklahoma, shall have a permanent injunction for as long as the subject flooded lands are used as a municipal water source, enjoining any interference with the rights conferred upon the City by its exercise of eminent domain."

The United States now appeals that portion of the trial court's judgment purporting to vest title to the Tribe's mineral interest in the City and the trial court's alternative order enjoining the United States from asserting any claim whatsoever against the City concerning the acreage used by City for a reservoir.

By cross appeal, the City appeals the award of $42,932 to the United States. In this regard, it is the City's position that any award should have been based on the pretrial stipulation that the City's reservoir interfered with the Tribe's access to oil underlying only 290.93 acres, not 858.64 acres. The City asserts that by multiplying 290.93 by 50, the money judgment in favor

---

* Of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

of the United States should be $14,546, not $42,932.

As we understand it, the City's reservoir has inundated some 858.64 acres beneath which the Tribe has reserved mineral rights. However, by stipulation prior to the first trial of the matter, the United States "clarified" its complaint by stating that "the United States claims that only 290.93 acres [portions of four sections] of the 858.64 acres described in its Complaint have recoverable oil reserves which it alleges have been rendered inaccessible for economic recovery by inundation and for which the Osage Tribe has not been compensated. . . ." By agreement, this stipulation, including the clarification, carried over to the second trial. The testimony of all witnesses pertained only to the oil reserves beneath the 290.93 acre-tract, and no testimony pertaining to any mineral potential underlying the acreage situate outside such tract was offered.

It would appear that the parties upon trial were proceeding on the premise that damages would be computed on the basis of the estimated oil reserves underlying the 290.93 acres, multiplying that figure by the price per barrel, less estimated cost of drilling. However, the trial judge, by his own questioning of several witnesses, indicated that he was of the view that damages would be computed on the basis of the reasonable value of the Tribe's mineral interest to which access had been denied by virtue of the reservoir, on a per acre basis.

Three witnesses testified concerning the value of the Tribe's mineral interests. Witness Graves, a witness for the United States, testified that, in his opinion, the Tribe's mineral interests had a value of from $80 to $100 per acre. The City's witness Kiplinger testified that the total value of the Tribe's mineral interests should be computed at the rate of $50 per acre, multiplying that figure by 290.93 acres. On cross-examination, Kiplinger testified again that his figure of $50 per acre "was for the area of those four quarter sections." Thereafter, in response to a leading question, Kiplinger gave an answer which conceivably could be construed as indicating that his figure of $50 per acre applied to the entire area, i. e. 858.64 acres. The only other witness who testified concerning value was the City's witness Goldwall. He testified that the value of the Tribe's mineral interest underlying the 290.93 acres would be in the range of $35 to $50 per acre.

■ Based on the record before him, we conclude that the trial judge's finding that the value of the Tribe's mineral interest should be computed at the rate of $50 per acre was proper and well within the range of the testimony. However, the trial judge's further finding that the $50 per acre figure should be applied to the entire acreage, i. e. 858.64 acres, was not justified by the record and is clearly erroneous. In this regard, our review of the record leaves us with the definite and firm conviction that a mistake has been made. *United States v. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The $50 per acre figure should have been applied only to the 290.93 acres which the United States had conceded was the only acreage having recoverable oil reserves.

After the taking of testimony had been concluded and the trial judge had indicated he was going to award damages on the basis of 858.64 acres, the trial judge permitted the United States, on motion, to "amend" its claim. The reason given therefor was to permit an amendment so as to conform to the evidence. However, in our view, there was no evidence which would justify such amendment. As indicated, the United States in effect stipulated that only 290.93 acres of the 858.64 acres described in the complaint had recoverable oil reserves which had been rendered inaccessible by the City's reservoir. More importantly, all testimony relating to recoverable oil reserves pertained only to the 290.93 acres. No testimony was presented indicating that recoverable oil reserves existed outside the boundaries of the 290.93-acre tract. Moreover, in our view, all testimony relating to the *value* of the Tribe's mineral interests affected by the City's reservoir relates to the 290.93 acres. The single response of the witness, Kiplinger, to a question put to him in cross-examination is too slender a reed upon which to hang a $42,932 judgment.

The trial judge, *sua sponte,* additionally ordered that, upon payment of the judgment entered against the City, the latter would be vested with the Tribe's mineral rights here involved. Recognizing the possibility of error in thus quieting title in the City, the trial judge alternatively enjoined the United States from thereafter instituting any action whatsoever against the City relating to the latter's maintenance of the reservoir. Without belaboring the point, it is sufficient to state that the trial judge also erred in this part of his judgment. The granting of such relief was outside the issues in the case, and was not justified by the record.

The judgment is reversed and the cause is remanded with directions that the trial court enter judgment for the United States, as trustee for the Osage Tribe, and against the City in the sum of $14,546, as permanent damages for the injury to the Tribe's mineral interests by virtue of the City's maintenance of its reservoir.