**WILCOX et al. v. RYNDAK et al,**

No. 25733. Oct. 1, 1935.

W. P. McGinnis, Fred M. Carter, Archibald Bonds, and Donald Prentice, for plaintiffs in error.

Morrison & Shipp, for defendants in error.

PER CURIAM. The defendants in error, hereafter referred to as plaintiffs, recovered a verdict and judgment against the plaintiffs in error, hereafter referred to as defendants, in the sum of $3,955.22, for the alleged failure of the defendants to drill a certain well or wells upon the lands involved herein. After motion for a new trial was made and overruled, the defendants appealed.

The facts of the case are substantially as follows: The lands involved herein consist of approximately 12 acres in the form of a square, located in the Oklahoma City oil field. Said tract will hereafter be referred to as the Wheeland land. On January 21, 1930, the owners of said land executed an oil and gas lease thereon to the defendant J. W. Wilcox, and the defendants are said original lessee and the assignees of said lease. The plaintiffs are the owners of an undivided 1/12 of the royalty interest in and to and under said land. About September 29, 1930, the defendants, or some one or more of them, drilled a producing oil well in the approximate center of said tract. Numerous producing wells have been drilled in the vicinity of said tract, those nearest to the lines thereof being as follows: Slick-Central well No. 2, completed May 11, 1931, approximately 225 feet north of the north east corner of said tract; Slick-Harrison well No. 1, completed September 16, 1930, approximately 130 feet east of the middle of the east line of said tract; Phillips-Hatcher well No. 1, completed August 12, 1930, approximately 280 feet south of the southeast corner of said tract; Skelly-Fields well No. 1, completed October 28, 1930, approximately 275 feet south of the south line and southeast of the southwest corner of said tract; Anderson-Pritchard Wilhoit well No. 2, completed May 15, 1932, approximately 275 feet west of the southwest corner of said tract; I. T. I. O. Company et al. Terrace-Lawn well No. 1, completed February 18, 1931, approximately 235 feet west of the middle of the west line of said tract; and Kessler-Grace well No. 1, completed December 16, 1930, approximately 140 feet north of the northwest corner of said tract. All of said wells were drilled to the depth of approximately 6,500 feet.

The theory of the plaintiffs' action is that oil having been discovered upon the Wheeland land, and also in the vicinity thereof, the defendants were impliedly obligated to further develop said land, and were also impliedly obligated to drill an offset or offsets to one or more of the wells close to the lines of said land, which, it is claimed, were draining oil therefrom, and that, by reason of the defendants' breach of said implied obligations, they had sustained great damage. The defendants answered by general denial, and further alleged that the cost of drilling and equipping a well on the Wheeland land was from $100,000 to $125,000; that, due to a variety of circumstances, it would not have paid them to drill an additional well or wells on said tract, and that no reasonably prudent operator, under all the circumstances, would have drilled such additional well or wells.

The cost of drilling, equipping, and operating the Wheeland well to January 4, 1934,

the date of trial, was $228,237.79, exclusive of the lease cost, and to said date said well had produced 256,158 barrels of oil, the proceeds of which were $174,443.43, resulting in a net loss to the defendants at that time of $53,794.36, and with the cost of the lease, $83,754.52. The Slick-Central well No. 2 had produced 171,015 barrels of oil to the date of trial, resulting in a loss to said date upon the cost of drilling, equipping, and operating the well of $92,332.66. The Slick-Harrison well No. 1 had produced to said date 35,580 barrels of oil. The Phillips-Hatcher well No. 1 had produced to said date 60,777 barrels of oil. The Skelly-Fields well No. 1 had produced to said date approximately 229,777 barrels of oil, which to said date had resulted in a loss on the cost of drilling, equipping, and operating the well. There was no evidence introduced by plaintiffs or defendants showing the cost of any well except the Slick-Central No. 2 north of defendants' lease, the Skelly-Fields south of defendants' lease, and the defendants' Wheeland well, and, as above stated, none of those wells had repaid the cost of drilling, equipping and operating same, and there was no evidence as to whether any one of them would ever pay out. It was not shown whether any of the other wells near the lines of the Wheeland tract had resulted in a profit or a loss at the date of the trial.

The plaintiffs sought to show by their experts that two wells should have been drilled at two hypothetical locations on the Wheeland land, and that such wells would have produced approximately 295,702 barrels each, which conclusion was arrived at by taking the average production of the five largest producers near said Wheeland land.

Several assignments of error are made, but we deem it unnecessary to consider but one, to wit, that the plaintiffs' evidence was wholly insufficient to justify the jury's verdict and the trial court's judgment.

The principal contention of the defendants is that the plaintiffs failed to establish sufficient facts justifying recovery. They contend, conceding there has been some drainage from under the Wheeland land by wells on surrounding properties, that it does not appear that, in the exercise of sound judgment, the defendants were required to drill additional wells upon said Wheeland land. Defendants further assert that plaintiffs' injuries and damage were uncertain and conjectural, and that the jury's verdict was the result of surmise.

It is well settled that there is no implied obligation on the part of an oil and gas lessee to drill an offset well to a well on adjoining premises, or to drill an additional well on the leased premises after oil and gas has been discovered thereon, save and except where the drilling of such well would probably, taking all the existing facts and circumstances into consideration, produce sufficient oil to repay the cost of drilling, equipping and operating such well, and also to produce a reasonable profit on the entire outlay, and neither the lessee nor the lessor is the arbiter of whether an offset well shall be drilled or the leased premises further developed, but both are bound by what a reasonably prudent operator would do under similar circumstances, and under no circumstances will a lessee be required to drill an offset or an additional well when the same would probably not result profitably to him. With respect to the implied obligation of the lessee to drill an offset well to one on adjoining premises, it is never sufficient to show that a well on adjoining premises is draining oil from under the leased premises. In all cases the ultimate fact to be established is that it would probably pay to drill the well or wells which it is claimed should have been drilled. And it is also well established that in cases of this kind, the burden is upon the lessor to show that the lessee has breached either the implied obligation to drill an offset well to one on adjoining premises, or to drill an additional well on the leased premises after oil or gas has been discovered thereon.

In Franklin et al. v. Wigton, 132 Okla. 236, 270 P. 1, this court held:

"A lessee of an oil and gas lease, upon an implied covenant to prevent drainage, is not required to drill an offset well unless oil or gas is found on adjacent lands, near the boundary line of lessor's land in sufficient quantity to pay a reasonable profit on the whole sum required to be expended, including the cost of drilling, equipping and operating the well."

In case of Robinson et al. v. Miracle et al., 146 Okla. 31, 293 P. 211, speaking of the lessee's implied obligation to drill additional wells on the leased premises after oil or gas had been discovered thereon, we said:

"The lessee is not required to drill additional wells where the probability of his making a profit on the further operations is small."

In the case of Empire Gas & Fuel Co. v. Haggard, 152 Okla. 35, 3 P. (2d) 675, re-

ferring to the lessee's implied obligation to further develop, we quoted with approval the following from the leading case of Brewster v. Lanyon Zinc Co., 140 F. 801:

" 'No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them.' "

In Goodwin v. Standard Oil Co. of La., 290 F. 92, the Circuit Court of Appeals for the Eighth Circuit held:

"In an action for the cancellation of an oil and gas lease and damages for breach of implied covenant to drill protection wells, the burden is on the plaintiff to prove the want of diligence on the part of the lessee in drilling such offset well."

To the same effect as the above authorities see: Eastern Oil Co. v. Beatty et al., 71 Okla. 275, 177 P. 105; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 P. 1069; Orr v. Comar Oil Co., 46 F. (2d) 59; Smith v. Mc-Gill et al., 12 F. (2d) 32; and Merrill on Covenants Implied in Oil and Gas Leases, page 192.

The plaintiffs failed to meet the requirements of the above authorities. It was not shown by any evidence what would be the cost of drilling a well at either of the two locations at which the plaintiffs contend wells should have been drilled, nor was it shown, or attempted to be shown, that if a well had been drilled at either of said locations, either of said wells would have produced sufficient oil or gas to compensate the defendants for the expense of drilling, equipping and operating the same, and an additional amount to provide a reasonable profit upon the total outlay. We cannot assume that this would have been the case. The only trace of evidence upon this point is found in one question propounded by the plaintiffs to one of their expert witnesses, Mr. Bayle, to wit:

"Q. I will ask you if you think it would have been economically profitable and that the prudent thing to do for a reasonable operator to have had an offset well drilled in the Block No. 37 offsetting the Kessler Grace well, at a reasonable time after the subsurface geology and the production was produced there? A. I think so."

At best this answer is but a loose conclusion of the witness, based upon no facts or data of any kind as to the cost of drilling, equipping or operating the well or the probable amount of oil or gas that would have been obtained therefrom, but rather a general imaginative affirmation to a leading question, and not positive even then. In the field of pure speculation, one conjecture may be as near the truth as any other. It is plain that plaintiffs were proceeding upon a wrong theory of recovery. The test is what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having regard to the interests of both the lessor and the lessee. No witness for plaintiffs testified what expenditure would be required for the drilling of a well on the Wheeland land, nor did anyone say that there was a reasonable probability that such well, if drilled, would have been profitable to the defendants. No evidence was introduced from which it can be said that the wells in the vicinity of the Wheeland land would eventually prove profitable and nothing shown relative to decline in production. On the other hand, the defendants produced evidence showing a substantial loss to the time of trial in the drilling, equipping and operating of the Wheeland, the Slick-Central No. 2, and the Skelly-Fields wells. Books and records, showing the various items of cost, the proceeds and general pertinent information in connection with said three wells, were produced and not controverted. In addition, the defendants presented a number of able, experienced and practical oil men, some of whom owned large interests and production in this field, and they stated that, in their opinion, the defendants acted as prudent operators in not drilling further upon the Wheeland land. It was necessary for plaintiffs to show the probable costs of drilling, equipping, and operating the well or wells which they contend should have been drilled, that oil or gas would probably have been discovered therein, and that the amount thereof would probably have been sufficient to have yielded a reasonable profit upon the total outlay. Where a recovery of damages is conditioned upon the existence or nonexistence of certain facts, he who seeks such recovery must show affirmatively the things essential thereto. It was unnecessary for defendants to disprove plaintiffs' right to recover. On the contrary, the burden rested upon the plaintiffs to establish their cause of action by a fair preponderance of the evidence. This, in our judgment, they failed to do.

The judgment of the trial court is therefore reversed and remanded, with directions to grant a new trial, and for further proceedings in accordance with this opinion.

The Supreme Court acknowledges the aid of Attorneys A. E. Montgomery, R. H. Wills, and H. R. Williams in the preparation of this opinion. These attorneys constituted an

advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Montgomery and approved by Mr. Wills and Mr. Williams, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and GIBSON, JJ., concur.