**GERSON et al. v. ANDERSON–PRICHARD PRODUCTION CORPORATION et al.**
**No. 2928.**

Circuit Court of Appeals, Tenth Circuit.
May 2, 1945.

J. B. Dudley, of Oklahoma City, Okl. (Rex Belisle and Dudley, Duvall & Dudley, all of Oklahoma City, Okl., on the brief), for appellants.

J. H. Jarman, of Oklahoma City, Okl. (James V. Harbison, Ed White, and Jarman & Jarman, all of Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The plaintiffs and intervenors sought to recover damages alleged to have been sustained by the failure of the defendants properly to develop and protect from drainage a certain tract of land in the Oklahoma City oil field. The cause was tried to the court and judgment was entered for the defendants. In view of the identity of interest of the plaintiffs and intervenors, for convenience, both classes will be referred to as plaintiffs; and in view of the relationship between the defendants, their separate corporate entity will be disregarded and they will be referred to in the singular.

These facts among others were found by the court: Roosevelt Place Addition and the Mary Gibbons tract are in the Oklahoma City field. The defendant acquired three oil and gas leases on respective parts of the Roosevelt Place Addition; the leases were subsequently communitized; and the plaintiffs are the owners of respective interests in the royalty estate. The Hoover, Layton, Oswego, and Simpson sands are found in the field at the approximate depths of 4025, 4900, 5950, and 6250 to 6500 feet, respectively. In 1930, the defendant completed five oil wells on the communitized lease in the Simpson sand. The defendant also owned a lease covering part of the Gibbons tract. Plaintiffs have never owned any royalty interest in that tract. In 1930 and the early part of 1931, the defendant drilled on the Gibbons lease four oil producing wells in the Simpson sand, and also a gas well, Gibbons No. 2, in the Oswego sand. From March through August, 1934, the defendant worked on Gibbons No. 2 from time to time, perforating the casing at different elevations and exploring for oil in the various sands. The casing was perforated at about 4000 feet, the approximate depth of the Hoover sand. After this development, and after the well had set, oil was discovered in the hole. Tubing was positioned, a test was made, and continuously thereafter oil was produced from the Hoover sand. At the time oil was discovered in the well, the existence of the Hoover sand in the field was well known, but it had not been ascertained to be oil bearing. Subsequent developments established its oil bearing characteristic in some parts of the field, and by January, 1935, the defendant was put upon notice of its presence in that area. In August, 1934, neither the Roosevelt Place Addition nor the Gibbons lease had proved profitable to the defendant, and production from each lease had fallen off to a large extent. Other than the Gibbons No. 2, the wells on the two leases were not producing either oil or gas from the Hoover or Layton sands. The Gibbons No. 2 well is situated in the northerly part of the Gibbons lease and near the southern boundary of the Roosevelt Place Addition lease. The first production test on the well showed one per cent water. The lower a well is located in the structure, the greater is the likelihood of striking water and the less the probability of finding oil in paying quantities. The Hoover sand dips downward to the north of the Gibbons lease. A described area in the Roosevelt Place Addition consisting of 3.44 acres was as certainly oil producing from the Hoover sand as may be established by evidence of sub-surface conditions, a second described area consisting of 4.96 acres was probably oil producing, and a third described area consisting of 7.37 acres was possibly oil producing. An offset well at approximately 520 feet on a northeast line from the Gibbons No. 2 well would have been within the 3.44 acre area of oil producing sand in the Roosevelt Place Addition; and on a line east of northeast about 570 feet from the Gibbons No. 2 well, an offset well in the Roosevelt Place Addition lease would probably have found oil in the Hoover sand. It would have cost approximately $35,000 to drill an offset well. While the Gibbons No. 2 well drained oil from the

3.44 acre area and the 4.96 acre area in the Roosevelt Place Addition, the quantity or extent of the drainage was not established by the evidence. The evidence was not sufficient to establish whether a substantial quantity of oil was drained from under Roosevelt Place Addition. Neither was the evidence sufficient to establish the quantity of oil in the Hoover sand that might have been produced on the Roosevelt Place Addition lease from a proper offset well. It would not serve any useful purpose to detail the evidence. It is enough to say that the material findings of the court are not clearly erroneous, due regard being had for the opportunity of the court to observe the witnesses, appraise their qualifications and credibility, and determine the weight to be given to their testimony. Therefore the findings are not to be disturbed on appeal. Prudential Insurance Co. v. Carlson, 10 Cir., 126 F.2d 607; Newell v. Phillips Petroleum Co., 10 Cir., 144 F.2d 338; Davies v. Lahann, 10 Cir., 145 F.2d 656; Stevens v. United States, 10 Cir., 146 F.2d 120.

■ The defendant was under a continuing obligation reasonably to protect the area in the Roosevelt Place Addition covered by the community lease from drainage from the Hoover sand by the Gibbons No. 2 well. A lease of this kind contains an implied covenant that the lessee will exercise reasonable diligence in the development of the leasehold and in the protection of it from undue drainage through wells on adjacent lands. And reasonable diligence in the development and protection of the premises means the doing of that which an experienced operator of ordinary prudence would do in the premises, having due regard for the interests of both lessor and lessee. But in the absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent to which or the diligence with which the operations shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence should do in the circumstances, bearing in mind that the purpose of the contract is the mutual benefit of the lessor and the lessee. Fox Petroleum Co. v. Booker, 123 Okl. 276, 253 P. 33; Broswood Oil & Gas Co. v. Mary Oil & Gas Co., 164 Okl. 200, 23 P.2d 387; Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P.2d 624, certiorari denied, 302 U.S. 736, 58 S. Ct. 143, 82 L.Ed. 569; Ramsey Petroleum Corporation v. Davis, 184 Okl. 155, 85 P.2d 427; Indian Territory Illuminating Oil Co. v. Rosamond, 190 Okl. 46, 120 P.2d 349, 138 A.L.R. 246; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Carter Oil Co. v. Mitchell, 10 Cir., 100 F.2d 945.

■ But the lessee does not bear an implied obligation to drill an offset well to prevent drainage unless, taking into consideration all existing facts and circumstances, it would probably produce oil in sufficient quantity to repay the whole sum required to be expended, including the cost of drilling, equipping, and operating the well, and also pay a reasonable profit on the entire outlay. No obligation rests upon the lessee to carry the operations beyond the point where they are profitable to him, even if some benefit to the lessor would result from them. Indiana Oil, Gas & Development Co. v. McCrory, 42 Okl. 136, 140 P. 610; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069; Wilcox v. Ryndak, 174 Okl. 24, 49 P.2d 733; Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., supra; Ramsey Petroleum Corporation v. Davis, supra; Brewster v. Lanyon Zinc Co., supra.

■ The burden rested on plaintiffs to prove the breach of the implied covenant to protect the leasehold from undue drainage. It was incumbent upon them to prove that had an offset well been drilled on the Roosevelt Place Addition, it probably would have produced or would produce sufficient oil to repay the expense of drilling, equipping, and operating the well, and also pay a reasonable return on the outlay. Wilcox v. Ryndak, supra; Ramsey Petroleum Corporation v. Davis, supra. In other words, the ultimate fact necessary for them to establish was that it probably would have paid to drill an offset well. Wilcox v. Ryndak, supra. As indicated by the findings, the proof submitted was insufficient in that essential respect. Therefore, plaintiffs were not entitled to recover. Wilcox v. Ryndak, supra; Ramsey Petroleum Corporation v. Davis, supra.

■■ Plaintiffs filed a motion and supplemental motion for new trial on the ground of newly discovered evidence. It is conceded that error cannot be predicated upon the denial of the motions, still we are asked to consider whether the court abused its discretion in refusing to open the judgment and permit the introduction of the additional testimony. The

matter of granting a new trial on the ground of after-discovered evidence rests in the sound judicial discretion of the trial court, and an order refusing a motion based on that ground will not be disturbed on appeal unless the discretion was plainly abused. Long v. United States, 10 Cir., 139 F.2d 652. We fail to find any basis for the conclusion that the court abused its discretion in the denial of the motions.

The judgment is affirmed.