**SUNRAY MID-CONTINENT OIL COMPANY, a corporation, Plaintiff in Error,**

v.

**Buena Vista McDANIEL, Defendant in Error.**

**No. 38059.**

Supreme Court of Oklahoma.

May 2, 1961.

M. Darwin Kirk, Paul D. Fielding, Jr., Tulsa, Montgomery & Montgomery, Purcell, for plaintiff in error.

George Bingaman, Purcell, for defendant in error.

IRWIN, Justice.

Buena Vista McDaniel brought this action against Sunray Mid-Continent Oil Company to recover damages for drainage in the sum of $1,745.18, and for further future damages of $1,250 for breach of an implied covenant in an oil lease to protect plaintiff's mineral interest from drainage. The case was tried to a jury resulting in a verdict in favor of Buena Vista McDaniel for the full amount. After judgment on the verdict was rendered and motion for new trial overruled, Sunray Mid-Continent Oil Company appealed. The parties will be referred to as they appeared in the trial court.

The oil and gas lease in question was executed in November, 1947, and that portion of the lease involved herein was kept in force by the payment of delay rentals. The defendant did not drill or cause to be drilled an oil and/or gas well on that portion of the lease which plaintiff seeks damages for drainage. It was stipulated that certain oil and/or gas wells off-setting that portion of the lease involved had been drilled, completed and produced while the lease was in force.

Plaintiff had written defendant letters inquiring as to its intention regarding the drilling of a well and on March 3, 1955, demanded that defendant commence a well on the leased premises within thirty days or release the lease and also demanded an accounting for drainage. Defendant did not commence the drilling of an oil and/or gas well, but released its oil and gas lease on the premises involved on May 13, 1955.

■ Both parties seem to agree that the implied covenant in an oil and gas lease to protect against drainage does not require a lessee to protect against all drainage irrespective of cost; that the drainage must be substantial and in order to establish a breach of an implied covenant to drill a protection well, the evidence must establish that the drilling of a protection well would probably produce sufficient oil and/or gas to repay the cost of drilling, equipping and operating such well, and also return a reasonable profit on the entire outlay; and, that the burden of establishing a breach of an implied covenant is upon the party asserting such breach.

■ There must be some basis or standard for determining whether or not a lessee has substantially complied with the implied covenants in an oil and gas lease to protect against drainage and the "prudent operator rule" is usually the yardstick. In other words, has a lessee done those things that an ordinary prudent operator would have done under similar circumstances?

In the first paragraph of the syllabus in Wilcox v. Ryndak, 1935, 174 Okl. 24, 49 P.2d 733, we held:

"There is no implied obligation on the part of an oil and gas lessee to drill an offset well to a well on adjoining premises, or to drill an additional well on the leased premises after oil or gas has been discovered thereon, save and except where the drilling of such well would probably, taking all of the existing facts and circumstances into consideration, produce sufficient oil to repay the cost of drilling, equipping, and operating such well, and also to produce a reasonable profit on the entire outlay, and neither the lessee nor the lessor is the arbiter of whether an offset well should be drilled or the leased premises further developed, *but both are bound by what a reasonably prudent operator would do under similar circumstances*, and under no circumstances will a lessee be required to drill an offset or an additional well when the same would probably not result profitably to him." (Emphasis ours).

See also, Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P.2d 624, 625, and North American Petroleum Co. v. Knight, Okl., 321 P.2d 964.

■ The evidence on behalf of the plaintiff relating to whether or not a protection well would have probably returned the cost of drilling, equipping and operating the well and a reasonable profit on the entire outlay is the testimony of a consulting petroleum engineer who was qualified as an expert. He testified that in his opinion a well on plaintiff's land would have been "commercially productive". On cross-examination he stated, "By commercially productive I mean a well which will recover to the operator, the man who spends the money, all the money he spends, plus a reasonable profit on the entire venture."

The following is the testimony on direct examination of the consulting petroleum engineer as to when it would have been possible to get a commercial producer to go in and drill a well.

"Q. Now Mr. Dooley, based upon your study of the production from these other wells, in that field, I'll ask you to tell the jury any conclusions you have formed, if you have formed any, as to whether or not on this date or at the date in 1955 when this lease was released by the defendant that it would have been possible to get a commercial producer to go in and drill the wells? A. Yes, I think it would have been.

"Q. It would have been at that time? A. Yes, sir.

"Q. Do you think it is now? A. Well, it would be very difficult to attract anyone at the present time. It might possibly be done but it is problematical."

Defendant released the oil and gas lease on May 13, 1955, and the above testimony was given on April 22, 1957.

The above evidence does not establish that a reasonably prudent operator would have commenced the drilling of a well on

**686**

the leased premises prior to the date defendant released its oil and gas lease. And the record is barren of any other evidence that would establish that a reasonably prudent operator would have drilled a well on the leased premises prior to the date defendant released its oil and gas lease.

 It is apparent plaintiff failed to establish a breach of the implied covenant to drill a well prior to the date defendant released its oil and gas lease. We therefore hold plaintiff is not entitled to damages for drainage while the lease was in force.

In considering if the defendant would be liable for further future damages we find the case of Plains Petroleum Corporation v. Fine, 174 Okl. 570, 51 P.2d 284 persuasive although not directly in point.

In that case we held:

"A lessee of adjoining tracts of land, who holds while drilling for oil under separate commercial 'unless' forms of leases, and who relinquishes, as contemplated by the terms and conditions of the instrument under which rights to explore were granted, one lease when production of oil is reached, while operating under the terms and conditions of the other is not liable for damages to the owners of royalty interest in the land upon which relinquishment is made, and this is so regardless of impracticability of future development to the interest of such royalty owners."

In the body of the opinion we cited York v. Trigg, 87 Okl. 214, 209 P. 417, wherein we held:

"No court is ever justified in invoking the maximum of equity for the purpose of destroying legal rights or of establishing rights that do not exist."

This is an action at law and one sounding in tort. The fact that "it would be very difficult to attract anyone * * *" to drill a well approximately two years later, and "it might possibly be done but it is problematical", or that plaintiff was unable to get a well drilled on her premises, did not create or establish rights for plaintiff which

did not previously exist. We therefore hold that plaintiff was not entitled to damages for further future damage.

We hold the trial court erred in failing to sustain defendant's demurrer to the evidence and failing to instruct the jury to return a verdict for the defendant. The judgment of the trial court is therefore reversed and remanded with directions to the trial court to vacate its judgment and enter judgment for defendant.

BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON and BERRY, JJ., concur.

WILLIAMS, C. J., and WELCH, J., dissent.