DEEP ROCK OIL CORPORATION v. BILBY et al.

No. 32361. July 1, 1947.

Rehearing Denied Nov. 25, 1947.

*186 P. 2d 823.*

Harry L. Fitzgerald, Jr., Hulette F. Aby, Charles N. Champion, and W. F. Semple, all of Tulsa, for plaintiff in error.

Sandlin & Balch, of Holdenville, for defendants in error.

CORN, J. This is an appeal from a judgment rendered in favor of plaintiffs, in an action brought to recover damages for defendant's alleged failure to drill a second offset oil well on a 40-acre tract in which plaintiffs owned an undivided 25-acre interest, resulting in damage·to plaintiffs by drainage of oil from under their lands. A jury was waived, the cause tried to the court, and judgment rendered against defendant for $3,000.

On May 28, 1943, defendant completed a well known as Price No. 1 on a 40-acre tract adjoining plaintiffs' land on the west. Defendant owned all the leases surrounding plaintiffs' land. The discovery well was completed at a time when federal regulations over the industry prescribed 40-acre spacing.

July 23, 1943, defendant completed a well on plaintiffs' land which was a diagonal offset to the discovery well. This well, known as Bilby No. 1, was abandoned as a dry hole, on November 5, 1943.

In January, 1944, defendant began negotiating with the federal authorities for release of the 40-acre drilling restrictions, and for permission to use optional spacing in the pool. March 17, 1944, defendant secured relaxation of the rules so as to permit 10-acre spacing.

During this period plaintiffs unsuccessfully had sought to have defendant drill a second well as a direct offset to Price No. 1. May 12, 1944, the plaintiffs' attorney advised defendant by letter that plaintiffs would not accept further delay rentals; and that the bank (where rentals were required to be deposited) had been directed not to receive further rentals, as the plaintiffs intended to bring suit. On May 19th, the bank received defendant's check in payment of delay rentals for 1944.

The bank then advised defendant it was holding Bilby's $20 rental payment in a special account, but nothing was said about Traugh's $50 rental payment. Defendant advised the bank the rentals had been tendered and if plaintiffs wished to reject same the money should be returned.

The record shows that after the Bilby No. 1 well was abandoned as a dry hole, the defendant drilled numerous other wells in the vicinity, while carrying on extensive exploration work (geologic and seismographing) in an effort to determine the value of the Bilby lease for further drilling.

In August, approximately three months after filing of this action, defendant commenced a direct offset to the discovery well, this well being known as Bilby No. 2. In October the operation was completed as a producing well, from the same formation as the discovery well, recovery being at the rate of 271 barrels per day.

This basis of plaintiffs' suit was that immediately upon the removal of the federal drilling restrictions the defendant was bound to drill an offset well on plaintiffs' land. Further, that the failure to drill and complete the well within a reasonable time resulted in Price No. 1 draining plaintiffs' land, thus preventing the offset well from being as

large a producer as the discovery well, thereby damaging plaintiffs by causing them a loss of at least $3,000 in royalties. The evidence showed the Bilby No. 2 declined rapidly in production after completion.

The testimony as to whether defendant conducted its operations as a prudent operator in view of all circumstances was in sharp conflict. The plaintiffs' witnesses testified that a reasonable time for beginning operations would have been from 30 to 90 days after relaxation of the spacing restrictions.

The testimony as to whether drainage had taken place was also in conflict. Plaintiffs' witnesses, other than one geologist, were oil producers who were familiar with this particular development. In substance, their testimony was that the discovery well (Price No. 1) was higher on the producing formation than plaintiffs' well; that as oil and gas were produced the water came in to replace the oil and gas; that channeling took place in the oil sands and there definitely had been drainage from under the plaintiffs' land.

One geologist testified for plaintiffs as a scientific expert. His testimony was that this pool was on a small, sharp structure, and that production from the discovery well caused channeling in the oil sand, water thereafter coming into the formation in place of the oil; that there had been drainage; that 30 to 60 days would have been a reasonable time within which to drill an offset well (to the Price No. 1).

Defendant's evidence was given by scientific experts employed by the company, and by other experts who had participated in the compilation and evaluation of scientific data regarding plaintiffs' land. Their testimony was directed toward showing that defendant had acted as a prudent operator in view of all circumstances, based upon geologic findings in the vicinity; that the field was on a peculiar or "freak" formation which required very careful study; that

there was an obstruction between the two wells and that there was no drainage from the Bilby No. 2 to the Price well.

Defendant has presented five propositions as grounds for reversal of this judgment, the first of which is that both Bilby and Traugh were bound by acceptance of the delay rentals when paid to the bank.

When the rentals were paid May 19th, the Price No. 1 was a producing well. Defendant asserts that such fact was known to plaintiffs and that they were bound to return the money if they did not intend to accept same, otherwise they waived their right to maintain any action for damages for drainage.

The record reflects that on May 12, 1944, plaintiffs' attorney advised defendant by letter that no further rentals would be accepted, and that a suit was to be filed.

Defendant relies upon the rule announced in Carter Oil Co. v. Samuels, 181 Okla. 218, 73 P. 2d 453, to the effect that where a lease provides for payment of delay rentals to a bank, acceptance of the payments is implied when deposit is made, and if the lessor does not wish to accept the rental, he is bound to give notice of his intention before such rentals are due.

Plaintiffs expressly notified defendant they would not accept further rentals. This notice was given before the rentals were due. The bank was also notified of this. Neither of the plaintiffs ever received any payment after the notice was given, although Bilby's portion was held by the bank in a special account and defendant was notified of such fact. Traugh testified he had never received any payment.

Under these circumstances it is apparent that the rule relied upon by defendant has no application, and the trial court was correct in finding there had been no acceptance of the rentals as would constitute a waiver of plaintiffs' right to bring this action.

Next to be considered is defendant's contention that plaintiffs failed to make out a case, in that there was no proof whether the Bilby No. 2 (offsetting the Price No. 1) would prove to be a commercial well.

Supporting this defendant urges a suit for damages for drainage can only be maintained on the same basis as a suit to cancel a lease for lack of diligence in development, and that under the decisions of this court, the plaintiff, in order to be entitled to recover, must prove that the undrilled location, if drilled, would be a profitable or commercial well, after consideration of all factors involved in development. Ramsey Oil Co. v. Davis, 184 Okla. 155, 85 P. 2d 427; Wilcox et al. v. Ryndak et al., 174 Okla. 24, 49 P. 2d 733; Gerson v. Anderson-Prichard et al. (1945) 149 F. 2d 444.

Defendant points out that plaintiffs offered no testimony that the Bilby No. 2 was a commercial well or that it would pay out, while defendant's evidence tended to show it to be an edge well, pumping since completion, and with production steadily declining since the well was completed.

The rule announced in the above-cited cases arose from instances where there was a total failure to drill. In such cases the applicability of the rule relied upon by defendant is apparent. Herein a different situation exists.

The Price No. 1 well had been completed as a producing well of 671 barrels per day. Defendant delayed drilling of the Bilby No. 2. Plaintiffs' evidence showed that the location was as nearly a proven location as could possibly be found. The production was from the same formation. Plaintiffs' geologist testified that had the Bilby well been drilled first it would have been as good a producer as the Price No. 1, but that drainage definitely had taken place, which prevented the Bilby No. 2 from producing as it should.

In this situation it seems clear that the rule requiring proof as to whether a well will be a commercial one cannot apply. The well in question was already completed and producing. Under such circumstances there was no necessity for requiring proof of the commercial probabilities of the Bilby No. 2.

Defendant's fourth contention is that when the Bilby No. 1 well was completed as a dry hole, the primary obligation to drill had been discharged as to the entire 40-acre tract. Thus, under the prudent operator rule, as enunciated in Magnolia Pet. Co. v. Rockhold, 192 Okla. 628, 138 P. 2d 810, when the dry hole was completed the defendant was justified in carrying out exhaustive exploration before deciding whether drilling another well on the Bilby tract would be prudent or expedient. See Ferguson v. Gulf Oil Co., 192 Okla. 355, 137 P. 2d 943.

Plaintiffs' evidence was that defendant had not acted as a prudent operator under the circumstances. There was other evidence that the location of the Bilby No. 2 was as near a proven location as could be had. Further testimony was given that 30 days after the relaxation of the restrictions would have been sufficient time within which to begin the well. Under the record it cannot be said that defendant discharged its obligation as a prudent operator when it completed the Bilby No. 1 as a dry hole, abandoned the location and immediately drilled other wells in the vicinity.

Defendant next contends that this judgment is erroneous because predicated upon the income from the Price No. 1, and not the Bilby No. 2.

The trial court did not point out the theory upon which the judgment was based. In Junction Oil & Gas Co. v. Pratt, 99 Okla. 14, 225 P. 717, this court allowed recovery for an undrilled location upon the theory that the lo-

cation, if drilled, would have produced as much oil as the original wells.

In the present case the evidence was that if the Bilby No. 2 had been drilled at the proper time it would have been as good a producer as the discovery well. Defendant did not drill the well, however, and drainage occurred. When the Bilby No. 2 was drilled it only produced about one-third the amount of oil produced by the discovery well, and this production declined rapidly.

In instances such as the Pratt case, supra, the damages naturally are largely speculative. Herein a higher degree of certainty exists. One known quantity is established, namely, the production from the discovery well (Price No. 1). Added to this is the evidence establishing that plaintiffs' well would have been as large a producer, had it not been for the drainage which occurred.

The last contention to be considered is defendant's claim that this judgment was a joint judgment in favor of both plaintiffs, who have no unity of interest, and that since Traugh was not entitled to recover any amount, the judgment must necessarily be reversed as to both parties.

Defendant's argument in support of this proposition is that Traugh accepted his part of the delay rentals, and so is not entitled to recover in any event. Hence, this judgment being void as to him, is unenforceable as to either plaintiff. This contention is without substantial merit, as his undisputed testimony was that he did not receive the $5 rental payment.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY and BAYLESS, JJ., concur. WELCH, J., concur in result. GIBSON, J., dissents.