No. 16,879.

ESTATE OF McGARY.

McGARY ET AL. *v.* BLAKELEY ET AL.

(258 P. [2d] 770)

Decided May 25, 1953.

Mr. Fred M. Winner, Mr. Robert L. Knous, for plaintiffs in error.

Messrs. Strickland, Strickland & Tull, for defendant in error Blakeley.

Mr. Benjamin E. Sweet, for defendant in error International Trust Company.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

The all-absorbing question involved here is that of the correctness of the rulings of the probate or county court, as well as of the district court, in admitting two instruments, purporting to be the wills of Andrew G. McGary, to probate.

As a safeguard and protection for the estates of deceased persons, the following sections of our statutes, so designed, are controlling and must in all respects, be strictly construed. These sections are to be found in chapter 176, '35 C.S.A., and section 1, chapter 340, S.L. '47, page 934, designated as "Wills and Estates," and are as follows:

"§39. Any will, by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and either be signed by the testator (or by someone for him in his presence and by his direction) in the presence of two or more credible witnesses, or the signature to which shall be acknowledged by the testator in the presence of two or more credible witnesses. In addition to such signing or acknowledgment, the testator shall, in the presence of said witnesses, declare said writing to be his last will and testament, and said witnesses, at his request, in his presence and in the presence of each other, shall attest the same by subscribing their names thereto."

\* \* \*

"§61. In all cases where any one or more of the witnesses to any will shall die or remove to some distant country, unknown to the parties concerned, or cannot be found, or if, for any reason, his or her testimony cannot be procured, it shall be lawful for the county or other court having jurisdiction of the subject matter, to admit proof of the handwriting of any such deceased or absent witness, as aforesaid, and such other secondary evidence as is admissible in courts of justice to establish written contracts generally, in similar cases, and may thereupon proceed to record the same, as though such will had been proved by such subscribing witness or witnesses, in his, her or their proper persons."

Session Laws '47, page 934:

"When it appears to the court that a will cannot be proven as otherwise provided by law because one or more of the subscribing witnesses to the will are at the time the will is offered for probate, or were at the time of the execution of the will, serving in or present with the armed forces of the United States or as merchant seamen, or are dead or mentally or physically incapable of testifying or otherwise unavailable, and if it shall appear by an attestation clause, which clause shall be prima facie evidence of the information therein con-

tained, or other evidence that said will was executed in accordance with law, the court may admit the will to probate upon the testimony in person or by deposition of at least two credibly disinterested witnesses that the signature to the will is in the handwriting of the person whose will it purports to be, or upon other sufficient proof of such handwriting. The foregoing provision shall not preclude the court, in its discretion, from requiring in addition, the testimony in person or by deposition of any available subscribing witness, or proof of such other pertinent facts and circumstances as the court may deem necessary to admit the will to probate."

McGary, to whom we herein refer as deceased, died at the age of seventy-four years on July 12, 1950 while a hospital patient in Denver, leaving a gross estate of approximately $78,000, and, as admitted, his lawful heirs are: Thomas McGary, of Long Beach, California, a brother, who has one daughter, Thresa Scanlon of Redondo, California; Nina Crater Blakeley, of Los Gatos, California, a niece, and the only child of Kate Crater, a deceased sister of McGary; James A. Griffitts of Tujunga, California, Mamie Griffitts Edmonds, of Long Beach, California, Nellie Griffitts McHenry, of Huntington Park, California, Maggie Griffitts Norris, of Lawrence, Kansas, Lyman T. Wiley, of Lawrence, Kansas, and Lauren W. Wiley, of Los Angeles, California, all of whom are nieces, nephews and grandnephews of McGary, and children and grandchildren of another deceased sister of McGary.

A billfold, found among his effects at the hospital, contained the two following documents, which have been identified and were marked as Exhibits B and C in the trial courts:

Exhibit B.

"Denver June 21 - 41

"I am in my sane mind. I was born May 9 - 1876 in Fall Leaf Kas I wish to be buried in Salida Colo Notify the Elks lodge to arrange the funeral, do not notify my

brother as he is to feeble to come. I will $250.00 to the cemitary at Salida for the up Keep of our lot in Fairview cemetery, to Tom my brother all the Govt. bonds I own about $10,000.00 worth after all expenses and stone are paid for divide it up with Mrs. Thresa Scanlon Redonda, J. A. Griffitts Los Angeles Mamie, Nellie, Annie & Maggie Griffitts all married but dont know their names living around Long Beach Cal. Would like the First National Bank of Denver to administer the estate if not the International trust co. the estate will amount to about $30,000 dollars

"A. G. McGary"

"Witness
"R. J. Martin
"Frank Graves"

Exhibit C.
Oxford Hotel
(Letter head)

"In case of trouble with me notify Mrs. N. C. Blakeley 105 Loma Alta Ave Los Gatos Cal. who is my beneficiary, Will is in safety box 123 first national bank Have burial of Hoffmans Intermènt at Salida Colo.

"A. G. McGary,"

"Estate about 30,000"

As indicated in Exhibit C, deceased had safety deposit box No. 123 at the First National Bank, and when it was duly opened, the following document, marked Exhibit A, was found:

"Salida, Colo., May 23 - 1919

"This is the only will I have left. I am in sound mind and I leave all my money on me and in the banks, all bonds, stamps, stocks & insurance to my sister Mrs. Kate Crater and if she is not alive to my niece Nina Crater. My sister or my niece to be administrator with out Bond.

"A. G. McGary
Salida
Colo."

"Witness

  "Wm. Bramley

  "Wm. Phibbs.

    "May 23, 1919

    "Codicil No. 1. $250.00 to Fairview Cemerty Salida Colo. for upkeep of MGary lot"

It is agreed that all of the documents above set out were in the handwriting of deceased, and it now should be noted that neither exhibit A or B contains an attestation clause, and that exhibit C bears no date. We will refer generally to exhibit A as the 1919 document and exhibit B as the 1941 document. According to the agreed record, upon which this case is submitted, both exhibits A and B were presented for probate, and in the absence of any date shown on the files of the probate court, we assume these documents were presented at or near the same time. Exhibit A, the 1919 document, was presented with the petition of Nina Crater Blakeley, a daughter of Kate Crater, a deceased sister of McGary, who is sometimes referred to as the testator. The International Trust Company, named as successor administrator, presented exhibit B and filed its petition for probate thereof.

Nina Crater Blakeley, proponent of exhibit A, filed a caveat to exhibit B, known as the 1941 instrument, and plaintiffs in error, which include all of the other heirs of deceased, filed a caveat to exhibit A, known as the 1919 instrument.

Neither of the caveats questioned the testamentary capacity of deceased, but averred that the instruments to which the caveat was directed had not been executed according to the statute hereinabove set out. In the caveat to exhibit B, the 1941 instrument, it is alleged that if exhibit B, the 1941 instrument, was entitled to probate as having been duly executed, it was a codicil to, and republished, the 1919 instrument, and thus entitled exhibit A, the 1919 instrument, to probate without the necessity of any further proof.

In the caveat to exhibit A, it was alleged that exhibit B, the 1941 instrument, revoked exhibit A, the 1919 instrument, by implication. The allegations in both caveats were timely denied. Trial on the issues raised by the caveat to exhibit B, the 1941 instrument, was first heard, and after proof of death, proof of the identity and genuineness of the signatures of the two witnesses, as well as the handwriting of decedent, and that the 1941 instrument was found in deceased's possession at the time of his death; the probate or county court denied the caveat and admitted exhibit B, the 1941 instrument, to probate; and further ruled that it revoked all prior testaments of deceased. On this hearing, plaintiffs in error, Thomas McGary et al. contended with the trust company proponent that the proof above mentioned was sufficient to raise a presumption that this instrument had been duly executed in accord with the statute. The judgment admitting exhibit B to probate was appealed to the district court, together with a request for a jury trial. On trial in the district court, it was established that exhibit B was in decedent's possession at the time of death; that it was entirely in his own handwriting with the exception of the witnesses' signatures; that the witnesses were both identified. It was further shown that their signatures were genuine; and it was shown that both witnesses were deceased. Exhibit C was introduced and shown to be in the handwriting of deceased; that it was in his billfold at the time of his death; and it was admitted without objection. Exhibit A, the 1919 instrument, was received in evidence and established that it was found after testator's death in the safety deposit box, as herein referred to; and a deposition of the caveator's husband was introduced and admitted in evidence.

It is agreed that upon the urging of plaintiffs in error, Thomas McGary et al., that the trial court directed the jury to find that exhibit B, the 1941 instrument, was entitled to probate as a duly executed testament. The

trial was then continued by order of court on the issue of the republication of exhibit A, and while the matter was thus pending, the petition of Nina Crater Blakeley for the probate of exhibit A, the 1919 document, was heard in the county court and the issue limited by stipulation to the question of due execution, since the other issue raised by the caveat, that is, republication, was pending in the district court, the court had prematurely ruled that exhibit B revoked all prior testaments. The Trust Company, as proponent of the 1919 document, exhibit A, appeared with the caveators, now plaintiffs in error, and following the evidence and the arguments, the caveat was denied and exhibit A was found to have been duly executed and admitted to probate, subject to the ultimate finding as to whether it had been revoked by implication by exhibit B. The caveators, plaintiffs in error, appealed this finding to the district court and upon stipulation, this matter was consolidated with the then pending case involving exhibit B, hereinbefore mentioned.

At the hearing of the consolidated cases in the district court, all of the evidence previously offered and admitted in the hearing on the admission of exhibit B, the 1941 document, was reoffered and admitted as part of the record of the appeal of the county court hearing on exhibit A, the 1919 document; and in addition thereto, the proponent of exhibit A adduced adequate proof that the signature of "Wm. Phibbs," which appears on exhibit A, was the signature of a close friend of decedent by that name who resided in Salida, Colorado, on May 23, 1919, which was the then residence of deceased, and that "Wm. Phibbs" died twenty-five years prior to the time of the trial. It also was sufficiently proven that the proponent of exhibit A, the 1919 instrument, had made diligent effort to ascertain the identity and whereabouts of "Wm. Bramley," whose purported signature appears on exhibit A as a witness, but such efforts were without avail. After full argument, the

trial court found, so far as is pertinent here, the following, in substance: That the Exhibit A, dated in 1919, is entitled to probate on any one of three grounds: 1. That the proof is sufficient under the law to entitle its admission as a testamentary disposition. 2. If that proof is, for some reason, held not sufficient, the document is entitled to probate because of its antiquity under the ancient document rule, the evidence showing that it is at least thirty years old; and there is nothing in the evidence to indicate that the document was not executed on its shown date. 3. The document is entitled to probate because the other instrument, dated in 1941, is a republication of a faulty so-called codicil contained in the will of 1919.

The court then indulged in a discussion and finding as to the intended distribution of property, all of which, as will later appear, is not of consequence in our disposition of this litigation. The trial court made a final observation and finding that the 1941 document does not revoke the 1919 instrument, and that the 1941 document is a codicil to the 1919 will, which is in full force and effect, to be administered except as modified by the 1941 document.

As indicated, the matter of construction of the two documents as wills is not necessary, and we are glad to be relieved of that task, because both so-called wills are so ambiguous as to defy construction. In disposing of this case, we are not concerned with the intent of the deceased, but solely with the expressed intent of the legislature in directing the requisites of a will and the method of proof of due execution thereof. The documents before us, if defective because not executed in accordance with the requirements of law, are void for all purposes in connection with the estate. We, as well as all other courts of this jurisdiction, cannot disregard our statutes relating to the matter in hand. As will be observed by rereading section 39, supra, the requirements are plain. They are, to reiterate: the will must

be written; it must be signed by the testator, or someone for him in his presence and by his direction; it must be signed or acknowledged by the testator in the presence of *two or more* witnesses; the testator must declare the instrument to be his last will and testament in the presence of the witnesses; the testator must request the witnesses to sign the instrument as attesting witnesses; and that the witnesses must sign as attesting witnesses in the presence of the testator and in the presence of each other.

Virtually nothing was established to show the authentic execution of either document, except that both were written and both were in the handwriting of deceased and that the signature of deceased attached thereto was genuine.

In sum, we have this situation, the 1919 document, exhibit A, is without attestation clause, and, as an attempted proof of due execution, we have proof of the genuineness of one witness's signature. In the absence of an attestation clause, no presumption may be indulged as to due execution simply by the proof of signatures. If there is no attestation clause the facts of the execution may be shown by other evidence. An attestation clause is prima facie evidence of the facts stated in such clause. Our statute requires that the witnesses *shall attest* the same by subscribing their names thereto. This means that something more is required of witnesses than the mere placing of their names on the document. It requires an observation by the witnesses to see that the will was executed by the testator and that the testator had capacity to make the will. The word "attest" has far broader meaning than the word "subscribe." In instances for which provision is made, such as the death, inability or absence of witnesses, the statute provides the method of proving the execution by proof of the signatures of the witnesses if there is an attestation clause. The document now under discussion is not sufficient on its face, and certainly the proof of

the genuineness of the signature of one witness thereon is wholly insufficient to permit the document to be admitted to probate as having been duly executed. To thus by-pass mandatory requirements of our statutes in such matters made and provided, by admitting a document without an attestation clause upon the proof of the signature of one witness, then our statute is meaningless. It should be clearly understood by this time that holographic wills are not admissible in Colorado, and by the means here attempted this court will not indulge in bringing into existence a new type of will in Colorado by encroaching upon legislative functions.

On the question of admissibility of this 1919 document under the "ancient doctrine rule," it first is to be observed that this rule is rarely applied to the admissibility of wills, but usually it is involved in the admissibility of other documents into evidence. There are isolated instances where wills have been admitted under this rule where all of the requirements of the rule have been met, namely, proof that the instrument was thirty years old and the purported date thereon is not conclusive as to the age, and, further, the instrument must be valid on its face, which is lacking here.

The trial court stated as another ground for admission that if proof of execution was insufficient, and further, if the instrument be not admitted to probate as an ancient document, the 1941 will served to republish the 1919 instrument and thus gave life to an otherwise invalid will. As we will immediately see by reference to the 1941 document, exhibit B, if held to be valid, could not republish the 1919 instrument because the two instruments were not annexed, either actually or constructively, and there is no reference in the 1941 document to the 1919 document, thus ends the basis for that ground of admission.

What we heretofore have said with reference to exhibit A, the 1919 document, applies with equal effect to the 1941 document. Proof of the signatures of both

witnesses to the 1941 document is not sufficient in the absence of other statutory requirements hereinbefore discussed. This will, not meeting the requirements of the statute as indicated, is void for all purposes, and therefore a void document, or any part of it, cannot serve as a codicil or a republication of any other instrument, and more particularly, cannot give life to the 1919 instrument, wholly void for almost a total lack of proof of execution.

Without total disregard for our statutes, we cannot affirm the judgment of the trial court in admitting the two instruments, or either of them, to probate under the proof adduced. Since this leaves the situation the same as though deceased died intestate, there is no reason to discuss other questions, ably and conscientiously briefed, as to ineffectual documents.

The judgment is reversed and the cause remanded with directions that the case be remanded to the county court for proceedings as an intestate estate.