J.W.C. DAVIS and Gwendolyn Davis,
Plaintiffs–Appellants and
Cross–Appellees,

v.

R.K. CRAMER, Richard Haines, Irene M.
Light, Louis S. Madrid, Gary Sandlin,
and Sandlin Oil Corporation, Defen-
dants–Appellees and Cross–Appellants.

No. 87CA1627.

Colorado Court of Appeals,
Div. I.

Jan. 18, 1990.

Rehearing Denied Feb. 15, 1990.

Certiorari Granted June 25, 1990.

Samuel L. McClaren, P.C., Samuel L. McClaren, Denver, for plaintiffs-appellants and cross-appellees.

Burns, Wall, Smith & Mueller, George W. Mueller, Denver, for defendants-appellees and cross-appellants.

Opinion by Judge PIERCE.

In this quiet title action concerning rights under two oil and gas leases, the Davis lease and the Allensworth lease, both parties appeal. We affirm in part and reverse in part.

Plaintiffs, J.W.C. Davis and Gwendolyn Davis (the Davises), are the fee simple owners of the property at issue, except for a one-half, undivided interest in the mineral estate which had been reserved by their predecessors-in-interest, the Allensworths. On November 1, 1968, the Davises leased their mineral interest to the predecessor-in-interest of defendants, Gary Sandlin, Sandlin Oil Corporation, and Richard Haines (the Sandlin lessees). The term of this lease (the Davis lease) is for ten years "and as long thereafter as oil or gas or other minerals are produced...."

On March 16, 1978, the Davises brought this action alleging that the Davis lease had terminated under its terms and claiming trespass and slander of title by the Sandlin lessees.

While this action was pending, the Allensworths leased the other one-half undivided mineral interest to the Sandlin lessees (the Allensworth lease). The Davises, who had retained possession of the property, then denied the Sandlin lessees access to the southeast quarter of the property which the Sandlin lessees sought to enter for the purpose of drilling a well pursuant to their mineral rights under the Allensworth lease. The parties refer to this well as the "Exception" well.

Thereafter, the Sandlin lessees and the remaining defendants, who claim overriding royalty interests in the mineral estate, filed a counterclaim for the Davises' interference with the right of extraction that had been given to the Sandlin lessees under the Allensworth lease. Defendants claimed that, because they were unable to drill the Exception Well, they were entitled to damages for drainage of the mineral estate caused by an offset well located on adjoining property.

The trial court found that the Davis lease had terminated and awarded trespass dam-

ages to the Davises, but found in favor of the Sandlin lessees on the Davises' slander of title claim. The trial court found in favor of all the defendants on the counterclaim.

The Davises appeal the trial court's calculation of their damages and the measure of damages used by the trial court to calculate defendants' damages on their counterclaim. The Davises also appeal the trial court's findings on their slander of title claim and its denial of their request for attorney fees. Defendants cross-appeal the trial court's determination that the Davis lease had terminated.

We address the cross-appeal first, as it directly deals with the substance of this action.

## I.

Defendants contend that the trial court erred in finding that the Davis lease expired because of the lessees' failure to pay shut-in gas royalties during the primary term of the lease. We agree.

The habendum clause of the Davis lease provides for a primary term of ten years and an indefinite secondary term dependent upon the production of oil, gas, or other minerals. Absent some saving provision, the habendum clause provides for automatic termination of the lease upon the expiration of the primary term, if there is no production.

■ Generally, an oil and gas lessee is not obligated to produce in order to maintain the lease during its primary term, unless the lease contains some other clause, such as a drilling clause. 2 E. Kuntz, *Oil & Gas* § 26.4 (D. Dunn 1989). The Davis lease at issue here contains such a clause.

The Davis lease also contains a shut-in royalty clause providing for the payment of shut-in gas royalties "[w]hen no reasonable or convenient gas market is available." The purpose of this type of shut-in royalty clause is to provide for the payment of royalties in lieu of production if a well has been drilled and is capable of producing gas prior to the end of the primary term, but is shut-in because of an absence of a market for the product. 4 E. Kuntz, *Oil & Gas* § 46.1 (D. Dunn 1972).

In light of these lease provisions, even if we were to conclude that this was actually a shut-in well, we would hold that the trial court erred in finding that the lessees' failure to pay shut-in royalties during the primary term terminated the Davis lease. Such payments are equivalent to production, and production is not required during the primary term under the terms of the habendum clause. Therefore, payment of shut-in royalties is not required during the primary term. *See Sohio Petroleum Co. v. V.S. & P.R.R.*, 222 La. 383, 62 So.2d 615 (1952). The implied duty to market the product, upon which the trial court relied in making its findings, does not arise until the secondary term. *See Gillette v. Pepper Tank Co.*, 694 P.2d 369 (Colo.App.1984).

■ Here, no contest was made as to the validity of the lease prior to July 21, 1972, the commencement date for the drilling of a gas well (the Davis well) on the northeast quarter of the property. The trial court found that drilling operations for the Davis well were completed and that the well was capable of producing in paying quantities prior to November 1, 1973.

However, although the gas could not be marketed on November 1, 1973, because the well was not yet connected to a pipeline, the trial court found that a pipeline connection was obtained, production was commenced, and gas was sold by October 31, 1978. Because gas was being produced upon the expiration of the primary term, we conclude that the lease continued in existence into the secondary term for as long as production continued, absent a termination of the lease for some other reason. *See Gillette v. Pepper Tank Co., supra*.

■ The Davises challenged the validity of the Davis lease under the terms of its drilling clause, but insufficient findings were made by the trial court on that issue. Therefore, the cause will be remanded for further findings, a determination of whether the lease terminated for a failure of the lessees to comply with the terms of the

drill or pay delay rental provisions of the drilling clause, and an assessment of damages on the Davises' trespass claim, if necessary.

## II.

In calculating the trespass damages of the Davises for drainage of the mineral estate by the Sandlin lessees through their operation of the Davis well, the trial court made deductions for extraction costs incurred by the Sandlin lessees. The Davises contend that in so doing, the court erred. If the Sandlin lessees are determined to be willful trespassers, on remand, we agree that the Davises' damages should not be reduced.

■ A willful or intentional trespasser is one acting in bad faith and is liable for the value of the removed minerals at the surface without deductions for extraction costs. *Kroulik v. Knuppel*, 634 P.2d 1027 (Colo.App.1981).

■ We adopt the ruling in *Houston Production Co. v. Mecom Oil Co.*, 62 S.W.2d 75 (Tex.Com.App.1933) in holding that one who drills with knowledge of pending litigation concerning the validity of that person's claim of title is a bad faith trespasser as a matter of law. Consequently, on remand, the Sandlin lessees, knowing of the pending litigation, would not be entitled to deduct their extraction costs against any trespass damages awarded to the Davises for drainage of the mineral estate if they are found to have breached the drill or pay clause.

## III.

Next, we address the Davises' contention regarding damages awarded on defendants' counterclaim. The Davises argue that drainage of the mineral estate by the offset well on adjoining property is not a proper measure of damages for the Davises' interference with the Sandlin lessees' right of extraction under the Allensworth lease. We disagree.

■ A mineral lessee has a right of access to the leased property to use the surface as reasonably may be necessary to extract minerals. *Frankfort Oil Co. v. Abrams*, 159 Colo. 535, 413 P.2d 190 (1966). Consequently, a surface owner who unreasonably interferes with a mineral lessee's right to enter the property is liable for such damages as are the natural and probable result of such interference. *See Ball v. Dillard*, 602 S.W.2d 521 (Tex.1980). Drainage by an offset well is a recognized measure of damages. *See Deep Rock Oil Corp. v. Bilby*, 199 Okl. 430, 186 P.2d 823 (1947).

■ Here, expert testimony supports the trial court's findings concerning the amount of drainage that could have been prevented and the value of that drainage had defendants been allowed to drill the Exception well. Therefore, those findings will not be disturbed on appeal. *Johnson v. Smith*, 675 P.2d 307 (Colo.1984).

The Davises' remaining contentions regarding the trial court's assessment of damages and prejudgment interest awarded on the counterclaim are without merit.

## IV.

The Davises next contend that the trial court erred in finding that they failed to prove their claim of slander of title. We disagree.

■ The elements of slander of title are: 1) slanderous words; 2) falsity; 3) malice; 4) special damages. *Hein Enterprises, Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975 (Colo.App.1985).

■ Here, the record supports the court's finding that the Davises failed to prove their claim of slander of title, and therefore, that finding is binding on review. *See Johnson v. Smith, supra.*

The Davises' remaining contentions are without merit.

That part of the judgment concerning the Davises' title and trespass claims is reversed, and the cause remanded for further findings by the trial court as set forth

herein. The remainder of the judgment is affirmed.

TURSI and HUME, JJ., concur.