In the Matter of the **ESTATE OF Clarence ROYAL, deceased.**

**Waynetta NEAL, Appellant,**

v.

**Clarence ROYAL, Jr., William Royal, Robert Wayne Royal, and Marshall G. Royal, Objectors–Appellees.**

No. 89CA2005.

Colorado Court of Appeals,
Div. IV.

Jan. 17, 1991.

Rehearing Denied March 14, 1991.

Certiorari Granted July 29, 1991.

Bradley, Campbell, Carney & Madsen, P.C., Laura J. Vogelgesang, Golden, for appellant.

Hutchinson, Black, Hill & Cook, Heather Ryan, Forrest E. Cook, Boulder, for objectors-appellees.

Opinion by Judge DAVIDSON.

In this will contest, Waynetta Neal, daughter of decedent, Clarence Royal, appeals from the summary judgment denying probate of decedent's purported will. In entering that judgment, the trial court ruled that because the instrument did not bear signatures of attesting witnesses and was not a holographic will, it was not duly executed in accordance with § 15–11–502, C.R.S. (1987 Repl.Vol. 6B). We affirm, but on different grounds.

Three months before his death, decedent dictated a purported will to Neal, who was visiting from Texas, in the presence of two neighbors. Although decedent signed the document, the neighbors and Neal did not. Neal then took the document to Texas and kept it there until she submitted it for probate on January 29, 1989, six months after her father's death.

Decedent had four other children. Except for a bequest of $1 for each of these children, Neal was the sole legatee of the purported will. The other children (objectors) disputed the admission of the will to probate and filed a motion for summary judgment requesting denial of the document to probate on the grounds that it was not signed by attesting witnesses.

In response to objectors' motion, Neal and the neighbors submitted affidavits stating that each had witnessed the signing of the purported will and were now willing to sign it. Both neighbors also stated in their affidavits that, before signing the document, however, they needed to see the original to be certain that it was the same document they were now asserting they had witnessed. The trial court permitted testimony to this effect, and at the hearing, one neighbor remained uncertain that the purported will was the same document that

the decedent had ostensibly signed. At the conclusion of the hearing, the court denied the admission of the instrument to probate on the grounds that the signatures of attesting witnesses cannot be added to a will after the testator's death.

## I.

■ As a threshold matter, we disagree that the notice of appeal was untimely. Although the oral ruling by the court was announced from the bench on July 20, 1989, the trial court's written order was entered October 18, 1989. Contrary to objector's argument, a judgment is not final until there is a written order, dated and signed by the trial court. C.R.C.P. 58(a); *In re Marriage of Hoffner*, 778 P.2d 702 (Colo. App.1989). Neal's notice of appeal was filed within forty-five days of October 18, 1989, and accordingly, was timely. *See* C.A.R. 4(a).

## II.

■ In arguing that the trial court erred in denying the document into probate, Neal does not contend that the instrument is either a holographic or self-executing will. Rather, she argues that § 15–11–502, C.R.S. (1987 Repl.Vol. 6B), by its plain language, does not require that witnesses sign a will before the testator's death. The objectors, on the other hand, contend that the statute does require that a will be signed by witnesses prior to the testator's death and that the failure to do so cannot be remedied. Although we do not accept the strict rule proposed by objectors, we do agree that the trial court correctly refused to admit the purported will to probate.

Section 15–11–502, C.R.S. (1987 Repl.Vol. 6B) provides that:

"[E]very will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will."

The statute is silent as to any particular time limit for the attestation and is susceptible to varying interpretations on this issue. Thus, we must construe it in light of the apparent legislative intent and purpose. *See Dodge v. Department of Social Services*, 657 P.2d 969 (Colo.App.1982).

Here, the statute's history is useful in ascertaining legislative intent, *see Haines v. Colorado State Personnel Board*, 39 Colo.App. 459, 566 P.2d 1088 (1977), since the current version of the statute has some material differences from its predecessor. Significantly, it is no longer required that the witnesses sign in the presence of the testator or of each other.

"[The statute] differs from [previous law] in that witnesses need not sign in the testator's presence. Two witnesses are required and [must] witness either the signing or the testator's acknowledgment of the signature or his acknowledgment that the document is his will. The testator need not publish or declare the document as his will or request the witnesses to sign, and the witnesses do not have to sign in the presence of the testator or of each other." Colorado Legislative Council, Research Publ. # 194, Colorado Probate Code § 153–2–502, at 31–32 (1972) (Explanation).

Similarly, the comment to § 2–502 of the Uniform Probate Code, which is identical to § 15–11–502, states: "The formalities for execution of a witnessed will have been reduced to a minimum. [There] is no requirement that ... the witnesses sign in the presence of the testator or of each other." Uniform Probate Code § 2–502 (Comment), 8 Uniform Laws Annot. 107 (1983).

Contending that the clear legislative intent underlying this statute is to "validate wills wherever possible," *see*, Uniform Probate Code § 2–502 (Comment), *supra*, Neal argues that a judicial time restriction should not be added to the statute. Objectors, on the other hand, argue that although some of the formalities of the execution of wills have been relaxed, the law still requires strict compliance with the remaining execution requirements. Specifi-

cally, objectors emphasize that the overriding purpose of these requirements is to prevent fraud and that this purpose would be defeated if witnesses are allowed to sign the will after the testator's death.

We must interpret a statute to give effect to every word or phrase of the enactment. *Arellano v. Director, Division of Labor,* 42 Colo.App. 149, 590 P.2d 987 (1979). Accordingly, we agree with objectors that, if witnesses were permitted merely to substitute oral testimony for written signatures, it would obviate the requirement that witnesses sign the will. If the General Assembly had intended to do that, it could easily have omitted the signing requirement.

Moreover, although some of the formalities of execution have been extinguished, we find no legislative intent to relax those which remain. To the contrary, "[it] is arguable that as the number of formalities have been reduced, those retained by the Legislature have assumed even greater importance, and demand at least the degree of scrupulous adherence required under the former statute." *In re Estate of Peters,* 107 N.J. 263, 526 A.2d 1005 (1987).

In accordance with that, objectors urge adoption of a "bright-line" rule that a will must be signed by witnesses prior to the testator's death, as the Nebraska Supreme Court did in *In re Estate of Flicker,* 215 Neb. 495, 339 N.W.2d 914 (1983) ("A line must be drawn, and we believe that it is unreasonable to follow the alternative of permitting witnesses to sign a will at any time after the testator's death...."). *Accord In re Estate of Mikeska,* 140 Mich.Ct. App. 116, 362 N.W.2d 906 (1985); *In re Estate of Rogers,* 71 Or.Ct.App. 133, 691 P.2d 114 (1985) (attestation may not occur after the testator's death).

However, we conclude that the concerns set forth by the Supreme Court of New Jersey in *In re Estate of Peters, supra,* are more compelling. Specifically, the *Peters* court reasoned that there may be cases where the affixation after the testator's death could be reasonable, for example, if a testator has died moments after execution of the will, but before the witnesses have

had an opportunity to sign, *see In re Leo's Estate,* 12 Fla.Supp. 61 (Fla.Cir.Ct.1958), or if the witnesses were somehow precluded from signing before the testator died. Although, these situations will undoubtedly be a rarity, *see In re Estate of Flicker, supra* ("As a practical matter, we can think of no good reason for a delay in signing by witnesses until after the testator's death"), we decline to adopt a rigid rule that would preclude under any circumstance the signing by witnesses after the testator's death.

However, because an interpretation of § 15–11–502 which would permit witnesses to sign a will after the testator's death can "erode the efficacy of the witnessing requirement as a safeguard against fraud or mistake," *In re Estate of Flicker, supra,* the circumstances in which such procedure will be allowed must be extremely limited. "We must bear in mind that we are dealing with an instrument allegedly signed or acknowledged by a man who is now dead. He is not present to confirm or reject it." *In re Estate of Flicker, supra.*

Thus, we reject Neal's arguments that there should be either no time limitations imposed on when witnesses must sign a will, or that the statute must be read as permitting a will to be attested after the death of the testator as long as it is within a "reasonable time" of execution. *See In re Estate of Peters, supra.* Instead, we hold that the attestation of a will after the testator's death is permissible only upon a showing of exceptional circumstances making it impossible or extremely impractical for the witnesses to have signed the instrument before the testator's death.

There are no such exceptional circumstances here. It is undisputed that the purported will was not attested during the three months between its execution and the testator's death, nor during the six months between the testator's death and the application of the document for probate. The witnesses' only explanation for their failure to sign the will when it was executed was that they did not believe they could do so without a notary public. Further, there is no explanation for the failure to obtain the signatures in the ensuing nine months, oth-

er than the fact that Neal took the will to Texas with her.

Accordingly, we conclude, as a matter of law, that this document cannot be judicially validated as a will.

Judgment affirmed.

STERNBERG, C.J., and CRISWELL, J., concur.