In the Matter of the ESTATE OF Clarence ROYAL, Deceased.

Waynetta NEAL, Petitioner,

v.

Clarence ROYAL, Jr., William Royal, Robert Wayne Royal, and Marshall G. Royal, Respondents.

No. 91SC228.

Supreme Court of Colorado, En Banc.

Jan. 27, 1992.

Bradley, Campbell, Carney & Madsen, P.C., Laura J. Vogelgesang, Golden, for petitioner.

Hutchinson, Black, Hill & Cook, James England, Forrest E. Cook, Heather Ryan, Boulder, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to determine whether a will is validly executed when witnesses to the testator's signing of the will do not themselves sign the document until after the death of the testator. The court of appeals adopted a rule that allows attestation of a will after the testator's death upon a showing of exceptional circumstances which make it impossible or extremely impractical for the witnesses to sign the instrument before the testator's death. *In re Matter of Royal*, 813 P.2d 790, 792 (Colo.App.1991). Because we find that the policy concerns underlying legislative enactment of formal execution requirements are compromised by allowing signing after the testator's death, we affirm the judgment of the court of appeals but decline to adopt the rule of exceptional circumstances.

I

The core facts are not disputed. On October 6, 1988, Clarence Royal dictated a will to his daughter, Waynetta Neal, who was visiting Royal in Denver from Dallas, Texas. Neal handwrote the will and Royal signed it. The document was not signed by any witnesses. In his will, Royal left $1 to each of his other six children or stepchil-

dren and the remainder of his estate to Neal.[1] Royal died in January 1989.

Four days after Royal's death, Neal filed a petition for probate of the will and appointment of herself as personal representative. The will remained unsigned by any witnesses. Four of Royal's sons filed an objection to Neal's petition. Additionally, the objectors requested the court enter a summary judgment finding that the will advanced by Neal was invalid and inadmissible to probate, that Royal's estate was an intestate estate, and that the court appoint one of the objectors as personal representative.

Approximately four months later, in response to the motion for summary judgment, two of the decedent's neighbors filed affidavits stating that they were present at the time Royal signed the will and they were willing to now sign as attesting witnesses once they could review the document for proper identification. A hearing was held on the motion for summary judgment. According to Neal, the neighbors were not asked to sign the will at the time they witnessed Royal's signing of the document because Neal and her husband, a Texas notary public, thought that it was necessary that the witnesses sign in the presence of a Colorado notary. Since Neal did not have the opportunity to have the document notarized before her return to Texas, she took the document back to Dallas with her.[2]

In granting the motion for summary judgment, the probate court found that the will did not qualify as a holographic instrument and that the execution was fatally deficient because there were no attesting witnesses' signatures affixed before the testator's death.

The court of appeals affirmed on different grounds. The court found that "attestation of a will after the testator's death is permissible only upon a showing of exceptional circumstances making it impossible or extremely impractical [for the witnesses] to have signed the instrument before the testator's death." The court found, however, that there were no exceptional circumstances shown here to justify post-mortem signing of the will by the witnesses and that the document was, therefore, invalid as a will. *In re Matter of Royal*, 813 P.2d 790, 792 (Colo.App.1991).

## II

■ Section 15–11–502, 6B C.R.S. (1987), addresses the signature requirements for both the testator and the witnesses:

> [E]very will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and *shall* be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

(Emphasis added.) The statute does not dictate when the witnesses must sign, but only that they must sign and must have witnessed either the testator's signature or acknowledgement of the will or signature. While there is no doubt that the statute does permit signing by the witnesses after the testator has signed and outside the presence of the testator, *see In re Estate of Mikeska*, 140 Mich.App. 116, 362 N.W.2d 906, 910 (1985); *In re Estate of Kavcic*, 341 So.2d 278, 282 (Fla.App.1977), whether the death of the testator is the deadline for affixation of witnesses' signatures is an issue of first impression in Colorado.

The probate court found that, despite the silence of the statute as to whether attesting witnesses must sign before the testator's death, such a requirement is "necessarily inherent" in the attestation process. We agree.

---

**1.** There is a dispute in the record as to the actual number of Royal's children and whether one of the named devisees was a son or a stepson. These facts are, however, collateral to the issue in this appeal.

**2.** Neal stated that she was unable to obtain a notary public willing to come to her father's house in order to notarize the will and have the witnesses sign. Due to her father's failing health, the fact that her mentally retarded son became ill, and the fact that she was very busy cleaning her father's house, Neal stated that she was unable to get the document notarized before she had to return to Texas.

## A

■ Since the statute is silent, we must abide by the well-settled rule of statutory construction that statutes should be construed to effectuate the General Assembly's intent and the beneficial purpose of the legislative measure. *People v. Davis*, 794 P.2d 159, 180 (Colo.1990); *People v. Terry*, 791 P.2d 374, 376 (Colo.1990).

The Colorado provision is identical to section 2–502 of the Uniform Probate Code (prior to the 1990 revision of section 2–502)[3]. The commissioners' comment to this Uniform Probate Code provision states:

> The formalities for execution of a witnessed will have been reduced to a minimum.... There is no requirement that the testator publish the document as his will or that he request the witnesses to sign, or that the witnesses sign in the presence of the testator or of each other.... The intent is to validate wills which meet the minimal formalities of the statute.

Unif.Prob.Code § 2–502, (cmt.), 8 U.L.A. 107 (1983). Colorado adopted the Uniform Probate Code in 1974. Prior to that, more formalities were required for valid will execution in Colorado.[4]

■ Yet, despite the decrease in the number of formalities, certain formalities for execution persist. Those formalities require strict adherence in order to prevent fraud, *see In re Estate of Peters*, 107 N.J. 263, 526 A.2d 1005, 1010 (1987), because statutes governing execution are designed to safeguard and protect the decedent's estate. *In re McGary's Estate*, 127 Colo. 495, 496, 258 P.2d 770, 771 (1953). *See also* 2 William J. Bowe & Douglas H. Parker, *Page on Wills* § 19.4 at 66 (3d ed. 1960) ("The purpose of these statutes is to make it certain that testator has a definite and complete intention to pass his property, and to prevent, as far as possible, fraud, perjury, mistake and the chance of one instrument being substituted for another."). In Colorado, the legislature retained the requirement that, for a valid will, two witnesses must sign. This indicates legislative concern that this safeguard of validity of the instrument be preserved.

■ It has long been recognized that a will speaks as of the date of the testator's death. *Heinneman v. Colorado College*, 150 Colo. 515, 522, 374 P.2d 695, 698 (1962). The effect of this rule has been limited by several cases holding that the rule applies to the operation of the will and not its construction. *Id.; First Nat'l Bank of Denver v. Denver United States Nat'l Bank*, 409 F.2d 108, 112 (10th Cir.1969); *Miller v. Weston*, 67 Colo. 534, 538–39, 189 P. 610, 612 (1920); *Matter of Daigle's Estate*, 642 P.2d 527, 528 (Colo.App.1982). In other words, the validity of the will should be construed under the laws in place at the time of its execution. At the time Royal executed his will, the execution requirements under section 15–11–502 were the same as at the time of his death. Therefore, if the will speaks as of the date of the testator's death, it follows that the document should be complete at that time.

**3.** In 1990, the National Conference of Commissioners on Uniform State Laws approved the following revised section 2–502:

> (a) [A] will must be:
> (1) in writing;
> (2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and
> (3) signed by at least two individuals, each of whom signed within a reasonable time after he [or she] witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will....

Unif.Prob.Code § 2–502, 8 U.L.A. (1991 Supp.). The comment to this section states in part:

> The witnesses must sign as witnesses and must sign within a reasonable time after having witnessed the signing or acknowledgment. There is, however, no requirement that the witnesses sign before the testator's death; in a given case, the reasonable-time requirement could be satisfied even if the witnesses sign after the testator's death.

*Id.* (cmt.). While adoption of this revised provision would directly address the issue now before us, it is not this court's function but the role of the legislature to change the statutory scheme regulating probate in Colorado.

**4.** Presence of both the testator and the witnesses and a request by the testator to the witnesses to subscribe their names were some of the requirements in Colorado. *See* 1963 C.R.S. § 153–5–2.

Consequently, we adopt the bright line rule that witnesses' signatures should be affixed to the document at least by the time it becomes operative, the death of the testator.

### B

Other jurisdictions that have adopted statutes identical to Uniform Probate Code section 2–502 prior to the 1990 revision have addressed this issue. In *In re Estate of Flicker*, 215 Neb. 495, 339 N.W.2d 914 (1983), the court found it unreasonable to permit a witness to sign after the testator's death because that would "erode the efficacy of the witnessing requirement as a safeguard against fraud or mistake." *Id.* at 915. Since the decedent is not present to confirm or reject the validity of the instrument, the court found that requiring witnesses to sign before the testator's death minimized the potential for "miscarriages of justice." *Id. See also In re Estate of Mikeska*, 140 Mich.App. 116, 362 N.W.2d 906, 910 (1985) (agreeing with the rationale and the holding in *Flicker*).

We are persuaded by the rationale in *Rogers v. Rogers*, 71 Or.App. 133, 691 P.2d 114, 115 (1984). The court reasoned that, since attestation is a formal requirement for execution of a will and a will takes effect upon the testator's death, the formalities of execution must have been met at the time of that death in order for the will to be valid as of the time from which it is operative. Consequently, a decedent whose will remains unsigned by witnesses at the time of his death dies intestate. *Id.*

Conversely, in *In re Estate of Peters*, 107 N.J. 263, 526 A.2d 1005 (1987), after discussing *Flicker*, the court declined to adopt a bright line rule requiring witnesses' signatures before the testator's death. Without further elaboration, the court recognized that, although the facts in the present case did not present such a situation, there may be cases where affixation of the witnesses' signatures after the testator's death would be permissible. The court instead adopted a reasonable time test where "signing must occur within a reasonable time of observation to assure that the signature attests to what was actually observed...." *Id.* 526 A.2d at 1013.

We agree with the rationale in *Flicker* and reject the reasonable time test advanced by *Peters*. Because we believe that the legislative intent in adopting the execution requirements was to reduce the possibility for fraudulent witnessing of a will, we deem it appropriate to impose a requirement that the witnesses sign before the testator's death in order to effectuate the beneficial purpose of the legislation. To permit signing within a reasonable time increases the chances for falsifying signatures, or coercing witnesses to sign documents that may not, in fact, be the will ascribed to the testator.

### C

We next address the exception to this rule adopted by the court of appeals. The court of appeals followed the rationale of *In re Peters* in declining to adopt a strict rule requiring the signing by witnesses before the testator's death and instead adopted a rule allowing attestation after death only upon a showing of exceptional circumstances.[5] The court of appeals holding goes beyond the scope of section 2–502 as evidenced by the legislative purpose. Since the sole power to enact general laws formulating state public policy is held by the General Assembly, *see Denver & Rio Grande Western R.R. Co. v. Denver*, 673 P.2d 354, 359 (Colo.1983), it is up to the legislature to determine if a statutory change in the execution requirements for probate is necessary.

5. We note that no argument was specifically advanced in the probate court on the issue of whether exceptional circumstances operated to preclude the witnesses from signing Royal's will before his death. The issue in the probate court was whether witnesses should be permitted to sign a will after the testator's death. The court of appeals was correct in addressing this issue, but, upon finding that there was an exceptional circumstances exception, it would have been appropriate for the court of appeals to remand the case for findings on the issue of existence of any exceptional circumstances. *See Davis v. Cramer*, 793 P.2d 605, 607 (Colo.App.1990) (remand for further findings required where trial court findings on issue were insufficient).

Consequently, we reject the exceptional circumstances exception to the rule that attesting witnesses must sign before the testator's death, and affirm the court of appeals judgment of invalidity of the document as a will.

KIRSHBAUM, J., concurs in the result only, and MULLARKEY, J., joins in the concurrence.

Justice KIRSHBAUM concurring in the result only.

The majority holds that legislative policies underlying section 15–11–502, 6B C.R.S. (1987), require the conclusion, as a matter of statutory construction, that a will not attested to by a sufficient number of witnesses prior to the testator's death is invalid and rejects the exceptional circumstances exception to such requirement adopted by the Court of Appeals. Because I find the rule announced by the Court of Appeals more compatible with the pertinent legislative policies, I would affirm the Court of Appeals judgment in its entirety.

As the majority recognizes, section 15–11–502, 6B C.R.S. (1987), is silent as to the date upon which an attesting witness must sign a document purported to constitute a will. At 1238. The majority then adopts the rule that such witness need not sign the document at the moment the testator's execution thereof was in fact witnessed, but rather may do so at any time prior to the death of the testator. At 1239. It suggests this rule is necessary to effectuate the intent and beneficial purposes of the above-referenced statute. At 1238.

In my view, the rule adopted by the majority unnecessarily frustrates relevant legislative policy. The majority suggests one purpose of the statute is to reduce the possibility of fraud. At 1238. The majority does not explain why a rule permitting

signatures up to the date of a testator's death, which period of time might well greatly exceed the nine months presented here, more properly protects heirs, beneficiaries, and the public from fraud in probate matters than the rule articulated by the Court of Appeals. It is difficult to accept the proposition that a document attested to twelve months subsequent to the date it is executed by the testator is less suspect than a document attested to two days subsequent to such date but one day subsequent to the testator's death. Surely the availability of adversarial adjudicatory proceedings is the primary safeguard against fraudulent conduct in matters of probate, whatever rule is adopted governing the date for securing signatures of attesting witnesses.

More importantly, another purpose of the section at issue and of the entire probate code is to safeguard and protect decedents' estates and to assure the fulfillment of a decedent's wishes concerning the disposition of that person's estate. § 15–10–102, 6B C.R.S. (1987);[1] *In re McGary's Estate,* 127 Colo. 495, 496, 258 P.2d 770, 771 (1953). The rule adopted by the majority unnecessarily frustrates this policy, whatever its actual effect might be with respect to reducing the potential for fraudulent conduct.

In the absence of legislative direction, judicial inquiry should focus on what rule best accommodates all circumstances surrounding the actual witnessing of a testator's sincere desires for the distribution of the testator's estate. In my view, the exceptional circumstances rule formulated by the Court of Appeals more appropriately acknowledges the policy of ensuring the fulfillment of the true wishes of a testator while reducing the possibility of fraudulent conduct. In this era of rapid transit and

---

1. The statute states in full as follows:

    **Purposes—rule of construction.** (1) This code shall be liberally construed and applied to promote its underlying purposes and policies.

    (2) The underlying purposes and policies of this code are:

    (a) To simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors, and incapacitated persons;

    (b) To discover and make effective the intent of a decedent in distribution of his property;

    (c) To promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors;

    (d) To facilitate use and enforcement of certain trusts;

    (e) To make uniform the law among the various jurisdictions.

    § 15–10–102, 6B C.R.S. (1987).

instantaneous communication capabilities, it is not difficult to envision a number of scenarios in which witnesses to a testator's recorded wishes might not actually execute the document articulating those wishes until some time subsequent to the testator's death. Requiring the proponent of a purported will to establish exceptional circumstances justifying late execution by an attending witness satisfies concerns about fraud. Avoiding the adoption of a day-certain rule reduces the likelihood that an intellectually appealing but artificial cut-off date will in practice ensure the frustration of a decedent's wishes respecting the distribution of his or her estate.[2]

The majority relies upon the rationale of *Rogers v. Rogers*, 71 Or.App. 133, 691 P.2d 114 (1984), to support its conclusion. At 1239. The reasoning in *Rogers* is circuitous at best. The observation that a will cannot become operative until the death of a testator does not address, let alone answer, the problem created by legislative silence with respect to when an attesting signature must be affixed to a document that affects legal rights only upon the happening of such death.

I agree with the majority, as did the Court of Appeals, that the reasonable time standard adopted in *In re Peters*, 107 N.J. 263, 526 A.2d 1005 (1987), does not represent a satisfactory solution. At 1239. It must be observed, however, that the majority's recognition that a witness' signature will be deemed valid if affixed to a document purporting to constitute a will at any time prior to the testator's death, though subsequent to the testator's execution of the document, could itself be characterized as a bright line "reasonable time" rule. Such rule could invite all of the uncertainties inherent in the standard announced in *In re Peters*.

The exceptional circumstances test formulated by the Court of Appeals better satisfies the broad legislative objectives of ensuring fair effectuation of the desires of a decedent. It places a burden upon attesting witnesses who delay their execution of a purported will to convince a probate court that exceptional circumstances justified such delay. Such flexible rule provides a standard that is manageable, equitable and responsive to important pragmatic considerations inherent in the peculiar emotional time frames characteristic of those critical life events giving rise to contested probate matters.

For the foregoing reasons, I would affirm not only the judgment of the Court of Appeals but also the rule articulated therein.[3]

I am authorized to say that Justice MULLARKEY joins in this concurrence.

---

**2.** Had the General Assembly considered some day-certain rule to be appropriate, it could have adopted one similar to the provision that a devisee must survive a testator by 120 hours. § 15–11–601, 6B C.R.S. (1987).

**3.** Because in my view the record reveals that as a matter of law the facts relied upon to justify the late signings here do not constitute exceptional circumstances, I disagree with the majority's suggestion that adoption of the exceptional circumstances rule would require a remand for further probate proceedings. At 1239 n. 5.